## STOLL v. LOVING.

### (Circuit Court of Appeals, Sixth Circuit.   January 13, 1902.)

### No. 980.

PRINCIPAL AND AGENT—CONTRACT—CONFLICTING EVIDENCE — INSTRUCTION— QUESTION FOR JURY.

Defendant and another were buying up distillery properties to form a consolidated company. Plaintiff claimed to have made a complete verbal contract with defendant to act as his agent in the purchase of certain stock, and that defendant referred him to his associate, as authorized to complete the details. Plaintiff subsequently signed a letter, written and signed by such associate alone, which embodied the terms of the contract. Defendant then purchased the stock, without the intervention of his associate or of plaintiff. Defendant denied the verbal contract, but testified that he had advised plaintiff that in his absence the transaction might be carried on with his associate, with whom the trade was to be made. Defendant denied knowledge of the letter of his associate prior to the day of purchase, and stated that the associate was not authorized to represent him. The deposition of the associate showed that, while not acting for defendant, the latter knew of the letter in question, which was written under his advice and with his consent. *Held*, that, the evidence being conflicting, an instruction that there was no evidence which would authorize a finding that plaintiff had accepted a contract in writing from the associate, to the exclusion of defendant, was erroneous.

In Error to the Circuit Court of the United States for the District of Kentucky.

Levy Mayer and Alex P. Humphrey, for plaintiff in error.
John L. Dodd and David W. Baird, for defendant in error.

Before LURTON and DAY, Circuit Judges, and WANTY, District Judge.

DAY, Circuit Judge.   This action was brought in the circuit court to recover upon a contract for compensation to the plaintiff, as agent of the defendant, Stoll, and one Shaw, in the purchase of the stock in a distillery company known as the Mattingly Company. It appears from the testimony that Stoll and Shaw were engaged in buying up distillery properties in the state of Kentucky in the year 1899; and it is alleged in the petition that a contract had been made whereby the defendant was to pay the plaintiff a certain commission for the purchase of the stock within a given time, and after the plaintiff had brought the parties together the defendant availed himself of the plaintiff's labor in that behalf, and purchased a majority of the stock. The argument in this case has

taken a wide range, discussing some phases of the case and disputed questions of fact which are not important now to consider. The testimony for the plaintiff tended to show a state of facts warranting the submission of the case to the jury upon the view of the law that where one has contracted to perform a service for another, and is prevented from complete performance by the wrongful intervention of the other party, he may, among other remedies, recover for the value of his services actually rendered while undertaking to carry out the contract. The jury was told in this connection that no recovery could be had as for a complete performance of the contract. If, however, after the plaintiff had entered upon the execution of the contract, the defendant interfered, and took up the negotiations begun by the plaintiff, and completed the purchase, the efforts of the plaintiff having brought the parties together, so that the purchase, at a price satisfactory to the defendant, was made as a result of his efforts, the plaintiff might recover a fair and reasonable compensation for the services rendered. No exception was taken to this general charge of the court.

The question which we deem it necessary to notice arises upon the request of the defendant below for a special charge to the jury as follows:

"That if they believe from the evidence that the plaintiff, H. V. Loving, knew, or had reasonable grounds to believe, that G. B. Shaw and C. H. Stoll were desiring to purchase the stock of the Mattingly C mpany, not for themselves, but for some other person, and subsequently the said Loving accepted a contract in writing from G. B. Shaw alone, and that said Stoll was not bound to fulfill the said contract personally, the jury should find for him."

To this request the court responded as follows:

"But the court declines to charge you in that precise form, because there is no evidence which would authorize you to find that the plaintiff accepted a contract in writing from G. B. Shaw alone, and to the exclusion of the defendant; but the court repeats what it has already stated,—that, before you can find anything in favor of the plaintiff, you must believe from the evidence that the defendant, either individually or on behalf of some undisclosed principal, authorized the plaintiff to negotiate for the entire capital stock of the Mattingly Company upon terms already stated."

The defendant excepted to the refusal to give the request, and to the part of the charge above given.

Was the court justified in saying to the jury that there was no evidence which would authorize a finding that the plaintiff accepted a contract from Shaw alone, to the exclusion of Stoll? The plaintiff's recovery, in the aspect in which the case was submitted to the jury, required that he should make out a contract with Stoll for the purchase of the Mattingly stock, the performance of which had been prevented by the wrongful intervention of Stoll in taking up the negotiations and concluding them after Loving had brought the parties together. The parties were directly at issue as to whether Stoll had made such a contract. To determine the pertinency of the charge given, a brief review of the facts which the testimony tended to establish is necessary. It appears that Stoll and one G. B. Shaw were buying up distillery properties in Kentucky with a

view to the formation of a consolidated company. The Mattingly Company was the owner of one of the desired properties. Mr. Loving was a stockholder in that company, and was approached by Stoll with a view to obtaining his services in obtaining this stock. Loving claims that he made a complete verbal bargain with Stoll as to the terms of the contract, and Stoll, having to depart for New York, referred him to Shaw, as one associated with him and authorized to complete the details of the bargain, and that Shaw reduced the agreement to writing, in the form of a letter dated January 26, 1899, in which he endeavored to embody the terms of the contract. Loving signed this letter as correct, but says he protested as to some of its terms. This letter was signed by Shaw alone. Subsequently Loving wrote to Shaw that he had obtained a certain figure on the majority of stock, and suggested a lower offer. On the 8th of February, Stoll purchased the majority stock at an advanced price. Stoll testified that he made no verbal contract with Loving, but pending the investigation was compelled to leave for New York, and, before leaving, advised Loving that he could treat with Shaw; that Shaw was the man with whom the trade was to be made; that, on the day of the purchase of the majority interest in the Mattingly stock, Loving told him that he had a contract with Shaw, which had not yet expired, for the purchase of the stock, referring to the letter of January 8, 1901; that he (Stoll) did not know before the details of the contract with Shaw, and that Shaw did not represent him; that they were not authorized to represent one another; that he had not seen the letter in question until Loving showed it to him, and that Shaw had never theretofore mentioned it to him. Shaw, who was jointly sued, was not served with process. His deposition consists mainly of declinations to answer questions; but he says that while he was not acting for Stoll, the latter knew of the letter of January 26th, which was written under his advice and with his consent. We are not now concerned with the truth or falsity of these opposing claims. It was essential to the plaintiff's recovery, as we have seen, that the jury should find that he had a contract with Stoll for the purchase of the stock. Stoll denied any such contract, and claimed that, whatever the preliminary negotiations were, Shaw was the man with whom the contract was made, and that the written proposal accepted by Loving was made by Shaw alone, and in his own name; that Shaw's contract was unauthorized by him, and its details unknown to him until after its execution. Under these circumstances, upon one of the turning points of the case, was the court justified in saying to the jury that there was no evidence which would authorize them in finding that Loving had accepted a contract in writing from Shaw to the exclusion of Stoll? We think, in view of the testimony adduced, this charge was erroneous. While the court told the jury that the contract with Stoll must be shown before a recovery could be had, the statement that there was no testimony tending to support the defendant's contention in this particular was equivalent to an instruction to find for the plaintiff upon this vital issue in the case. We think there was a conflict of tes-

timony upon the matter in question, and that it should have been left to the jury to determine, under proper instructions.

In this view of the case, the judgment will be reversed, and a new trial granted.