MATHEWS v. COLUMBIA NAT. BANK OF TACOMA et al.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1900.)

No. 514.

APPEAL AND ERROR—SECOND WRIT OF ERROR—LAW OF THE CASE—ADDITIONAL FINDINGS.

A second writ of error or appeal does not authorize a reconsideration of any question determined on the first writ of error or appeal, and where the appellate court, on the first hearing, had construed the contract in suit, and had determined that one of the parties thereto was estopped to deny his liability thereunder, its decision is a final adjudication on that question, and becomes the law of the case, notwithstanding additional findings made on the second trial, which in no way modify the facts contained in the original finding, by which the contract was established.

In Error to the Circuit Court of the United States for the Western Division of the District of Washington.

T. W. Hammond, for plaintiff in error.
P. Tillinghast, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. The Columbia National Bank of Tacoma was an association organized under the national banking acts of the congress of the United States on September 2, 1891, with

an original capital stock of $200,000, divided into shares of $100 each. ·It was provided in the articles of association that the capital stock might be increased at any time by shareholders owning two-thirds of the stock; according to the provisions of the act of congress of May 1, 1886 (24 Stat. 18). The organization commenced a banking business in the city of Tacoma in September, 1891, and so continued until October 24, 1895, when the bank was closed, and the comptroller of the currency appointed a receiver, who afterwards resigned, and the defendant in error Philip Tillinghast was appointed as receiver of said association, and duly qualified as such. At a regular meeting of the shareholders of the association called and held on January 12, 1892, an amendment to the articles of association was passed, providing "that under the provisions of the act of May 1, 1886, the capital stock of this association be increased in the sum of $300,000, making the capital $500,000." It was further resolved "that, as the money paid in amounts to $50,000 or more, the president or cashier be authorized to certify the same to the comptroller of the currency, and shall so continue to certify until the said $300,000 is paid in." The plaintiff in error, L. P. Mathews, became a stockholder in the bank on July 13, 1892, at which time he purchased 12 shares of the original stock of the bank, which were duly transferred to him, and a certificate issued and delivered therefor. On October 28, 1892, plaintiff subscribed for 23 shares of the increased capital stock of the association authorized at the meeting of the shareholders on January 12, 1892, and paid to said association $2,300 therefor, whereupon the name of the said L. P. Mathews was entered upon the books of the bank as the holder of 23 shares of the increased capital stock of the bank, and·a certificate therefor was issued and delivered to him. On November 2, 1892, the plaintiff gave a proxy in blank to the officers of the bank, which was never formally revoked. The blank was filled in with the name of T. W. Bean, and the proxy or power of attorney, as thus filled out, appointed Bean as the attorney for the plaintiff in error, and in his name, place, and stead to vote at any and all stockholders' meetings of the bank at which the plaintiff would have the right to vote, and in the same manner as he would do were he personally present, with full power to substitute an attorney under him for like purposes. On December 28, 1893, a dividend of 4 per cent. upon the capital stock of the bank was declared, payable January 2, 1894, and on the last-named date two checks were issued to plaintiff by the bank, and forwarded to him, for $48 and $92, respectively. Both of these checks were received by the plaintiff in due course of mail, and the money collected by the plaintiff upon the same. On September 9, 1895, at a meeting of the stockholders of the bank, a resolution was adopted increasing the capital stock of the bank $150,000, making the capital stock of the bank, after increase, $350,000. T. W. Bean was present at this meeting, and voted a number of shares of stock as proxy, including 12 shares of the stock belonging to plaintiff. On September 9, 1895, a certificate was forwarded by the officers of the bank to the comptroller of the currency, showing that the

capital stock of the bank had been increased pursuant to the act of congress approved May 1, 1886, in the sum of $150,000, all of which had been paid in cash, and that the paid-up capital stock of said bank amounted to $350,000. On the 23d day of October, 1895, the comptroller of the currency issued a certificate approving of the increase of the capital stock of the bank in the sum of $150,000, and certifying that the same had been duly paid into said bank as part of the capital stock thereof. On the 22d of June, 1896, the comptroller of the currency, having ascertained that the assets and property and credits of the association were insufficient to pay its debts and liabilities, made an assessment and requisition, as provided by said acts of congress, upon the shareholders of the bank, of $61 upon each and every share of the capital stock held and owned by them, respectively, at the time of its default, and directed the defendant Philip Tillinghast, as receiver of the bank, to take all necessary proceedings, by suit or otherwise, to enforce to that extent the individual liability of the shareholders. On the 28th day of June, 1896, Tillinghast, as receiver of the bank, demanded of the plaintiff the said assessment and requisition upon 35 shares of the stock, whereupon the plaintiff paid to Tillinghast, as such receiver, the sum of $732, being the assessment and requisition upon 12 shares of stock, but refused to pay the balance of $1,403, the assessment and requisition on the 23 shares of increased capital stock. Thereafter, to wit, on July 11, 1896, plaintiff brought this action against the bank and Philip Tillinghast, receiver, to recover the sum of $2,525, being the amount paid by him on October 28, 1892, as his subscription of $2,300 for the increased capital stock of the bank, and $225 alleged to have been loaned to the bank on July 16, 1895, together with interest on both sums at the legal rate. A demurrer to the complaint was overruled (77 Fed. 372), and thereupon defendants filed an answer to the complaint and a counterclaim. In the counterclaim defendants asked judgment against the plaintiff for the assessment of $61 per share on 23 shares of the increased capital stock of the bank held by plaintiff, amounting to $1,403, with interest from the date of the assessment of June 22, 1896. The cause was tried before the court without a jury, and judgment rendered in favor of the plaintiff for $2,300, together with costs. 79 Fed. 558. The case was thereupon brought to this court by the defendant, upon a writ of error, where the judgment was reversed. 56 U. S. App. 636, 29 C. C. A. 491, 85 Fed. 934. This court held: That the bank had the power, after authorizing an increase of its capital stock in the sum of $300,000, so as to make the total capital stock of the bank $500,000, to reduce the increase to $150,000, making the capital of the bank $350,000, when that amount had been paid in; and that a subscriber to such a proposed increase of the stock of the bank, with knowledge that the stockholders had by a resolution, duly passed, authorized the officers of the association, with the approval of the comptroller, to increase the capital stock in any multiple of $50,000 up to $300,000, as the subscriptions should be paid in, was bound by his act of subscription in any amount of the increased

stock which might at any time thereafter be voted and authorized, not exceeding the amount of $300,000, and not exceeding the amount of money actually paid in; and that such subscriber was estopped from questioning the regularity of the proceedings of the bank, its directors, officers, or shareholders, provided the certificate and consent of the comptroller of the currency to such increase had been obtained. That, as the plaintiff had regularly subscribed for 23 shares of the increased capital stock of the bank, and had voted by proxy at the meeting when the increased capital stock of $150,-000 was authorized, and had received the dividends duly declared on said stock, he was estopped, as against the creditors of the bank, from claiming that he had no notice of the meeting which fixed the increase of the capital stock at $150,000, instead of $300,-000, or of the certificate thereafter issued by the comptroller of the currency. That he was also estopped from denying or repudiating the authority given by his power of attorney, and was estopped, after the failure of the bank, from denying that he was a subscriber to the increased stock; and that, having been a subscriber and stockholder, accepting the profits of the bank and sharing in its benefits, plaintiff was legally bound to all the consequences of his relations with the bank, and was not entitled to recover from the bank or its receiver the amount which he had paid on his subscription for the increased shares of the stock of the bank.

This court having determined that the plaintiff could not recover upon his alleged cause of action, the only issue to be determined upon the second trial was the counterclaim of the defendant Philip Tillinghast, as receiver of the bank, against the plaintiff, to recover the assessment of $61 per share levied by the comptroller of the currency upon the capital stock of the bank, which assessment upon the 23 shares of the increased capital stock of the bank held by the plaintiff amounted to $1,403; and with respect to that issue the liability of the plaintiff was practically determined, when it was held that, as the holder of the 23 shares of the increased capital stock of the bank, he was legally bound to all the consequences of such relation to the bank. It appears from the record brought here upon a second writ of error that upon the second trial in the court below the court made certain additional findings, and thereupon entered a judgment in favor of the defendant Tillinghast for the sum of $1,403, with interest and costs. The additional findings are as follows:

"(22) That it is not proven by any evidence in the cause that plaintiff ever subscribed for or agreed to take any share or portion of the increase of capital mentioned or described in the instrument signed by the comptroller of the currency of the United States on October 23, 1895, purporting to approve an increase of the capital of said association. (23) That it is not proven by any evidence in the cause that any debt was incurred by the defendant association subsequent to the time when the instrument purporting to be a certificate of approval of an increase of capital of said association was signed by the comptroller of the currency of the United States on October 23, 1895. (24) That it is not proven by any evidence in the cause that any person who dealt with the defendant association subsequent to January 12, 1892, relied, or could have rightfully relied, upon any act or conduct of plaintiff having reference to the proposed increase of capital for which plaintiff subscribed. (25) That it is not

proven by any evidence in the cause [that any person] while dealing in any manner with the defendant association subsequent to January 12, 1892, believed, or had any right to believe, that the plaintiff was the owner of any valid increased stock of the association. (26) That it is proven and established by the evidence in the cause that each and every person who in any manner dealt with the defendant association subsequent to January 12, 1892, acted with notice that the increase of capital proposed and voted by the shareholders of the association on January 12, 1892, had not been certified or approved by the comptroller of the currency of the United States. (27) That it is proven and established by the evidence in the cause that all persons who dealt with the defendant association subsequent to January 12, 1892, and until after said association ceased its business on October 24, 1895, had due notice that the certificate of the comptroller of the currency of the United States approving of the increase of capital as voted and proposed by the shareholders of said association on January 12, 1892, had not been obtained by said association."

It is contended by the plaintiff that under these additional findings of the court there was no room for the law of estoppel declared by the court upon the former hearing, and that the judgment of the lower court entered in accordance with the opinion of this court should be reversed, and the circuit court be directed to enter a judgment in favor of the plaintiff. In the appellate courts of the United States, and in nearly all, if not all, the appellate courts of the states, a second writ of error or a second appeal in the same case only brings up for review the proceedings of the trial court subsequent to the mandate, and does not authorize a reconsideration of any question, either of law or of fact, that was considered and determined on the first appeal or writ of error. Bridge Co. v. Stewart, 3 How. 413, 425, 11 L. Ed. 658; Sizer v. Many, 16 How. 98, 14 L. Ed. 861; Tyler v. Magwire, 17 Wall. 253, 283, 21 L. Ed. 576; Phelan v. City and County of San Francisco, 20 Cal. 39, 44; Leese v. Clark, Id. 387, 416, 417. Mr. Justice Field, in the last case, speaking of the reasons for this doctrine, said:

"The supreme court has no appellate jurisdiction over its own judgments. It cannot review or modify them after the case has once passed, by the issuance of the remittitur, from its control. It construes, for example, a written contract, and determines the rights and obligations of the parties thereunder, and upon such construction it affirms the judgment of the court below. The decision is no longer open for consideration. Whether right or wrong, it has become the law of the case. This will not be controverted. So, on the other hand, if, upon the construction of the contract supposed, this court reverses the judgment of the court below, and orders a new trial, the decision is equally conclusive as to the principles which shall govern on the retrial. It is just as final to that extent as a decision directing a particular judgment to be entered is as to the character of such judgment. The court cannot recall the case, and reverse its decision, after the remittitur is issued. It has determined the principles of law which shall govern, and, having thus determined, its jurisdiction in that respect is gone. And, if the new trial is had in accordance with its decision, no error can be alleged in the action of the court below. Young v. Frost, 1 Md. 394; McClellan v. Crook, 7 Gill, 338."

In the present case this court, upon the former hearing, construed the contract which plaintiff entered into with the bank, and determined that he was estopped to deny his responsibility as a subscriber to the increased capital stock of the bank. This contract was established by the facts contained in the original finding, and those facts have not been contradicted, changed, or modified in any

particular by the additional findings. The decision of this court was, therefore, a final adjudication upon that question, and became the law of the case. The judgment of the circuit court is affirmed.