STOLL v. LOVING.

(Circuit Court of Appeals, Sixth Circuit. February 25, 1903.)

No. 1,126.

1. APPEAL—QUESTIONS REVIEWABLE ON SECOND APPEAL.
   An appellate court will not, on a second writ of error, review questions decided on a former writ of error in the same cause.

2. TRIAL—INSTRUCTION—FAILURE TO SUBMIT ISSUE.
   Where, in an action to recover a broker's commission on a purchase of property by defendant under a verbal contract, defendant alleged that the services were rendered under a written contract, which plaintiff made with another to defendant's exclusion, and with which he had no connection, and there was evidence upon which such defense might have been sustained, it was error not to submit that issue clearly to the jury.

In Error to the Circuit Court of the United States for the Western District of Kentucky.

Thomas W. Bullitt and Wm. Marshall Bullitt, for plaintiff in error. John L. Dodd and David W. Baird, for defendant in error.

Before SEVERENS, Circuit Judge, and THOMPSON and WANTY, District Judges.

WANTY, District Judge. The record now before us is almost identical with the one on which the former judgment in this case was reversed. The facts, so far as necessary, are stated by Judge Day in the opinion of this court reported in 112 Fed. 885, 50 C. C. A. 576. The evidence on the new trial was substantially the same as on the former trial, the trial judge repeated his former charge to the jury with no material alteration, so far as respects the ground or question on which the former judgment was reversed. Under these circumstances we must inquire whether the Circuit Court followed the instructions of this court in the matter upon which the former judgment was reversed, as that decision is the law of the case, binding on this court as well as

on the trial court.    This rule is stated by the Supreme Court in the case of Roberts v. Cooper, 20 How. 467–481, 15 L. Ed. 969:

"But we cannot be compelled, on a second writ of error in the same case, to review our own decision on the first. It has been settled by the decisions of this court that, after a case has been brought here ,,and decided, and a mandate issued to the court below, if a second writ of error is sued out, it brings up for revision nothing but the proceedings subsequent to the mandate. None of the questions which were before the court on the first writ of error can be reheard or examined upon the second. To allow a second writ of error or appeal to a court of last resort on the same questions which were open to dispute on the first would lead to endless litigation. In chancery a bill of review is sometimes allowed on petition to the court; but there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions, or speculate of chances from changes in its members. See Sizer v. Many, 16 How. 98, 14 L. Ed. 861; Corning v. Troy Iron Company, 15 How. 466, 74 L. Ed. 768; Himely v. Rose, 5 Cranch, 313, 3 L. Ed. 111; The Ocean Insurance Company v. Canter. 1 Pet. 511, 7 L. Ed. 242; The Santa Maria, 10 Wheat. 431, 6 L. Ed. 359; Martin v. Hunter, 1 Wheat. 304, 4 L. Ed. 97; and Sibbald et al. v. United States, 12 Pet. 488, 9 L. Ed. 1167."

See, also, Matthews v. Columbia Nat. Bank, 100 Fed. 397, 40 C. C. A. 444; Haley v. Kilpatrick, 44 C. C. A. 102, 104 Fed. 647; Ouray County v. Geer, 47 C. C. A. 450, 108 Fed. 478; Standard Sewing Mach. Co. v. Leslie (C. C. A.) 118 Fed. 559; Mutual Life Ins. Co. v. Hill (C. C. A.) 118 Fed. 711; Olsen v. North Pacific Lumber Co. (C. C. A.) 119 Fed. 77, and cases cited in those opinions.

Under the pleadings the jury were to determine whether the defendant had entered into a contract with the plaintiff to secure his services in obtaining stock of the Mattingly Company, whereby the defendant was to pay him a commission for the purchase of the stock; and whether, before the time for the purchase had expired, the plaintiff brought the parties together, and the defendant, taking advantage of the plaintiff's efforts, purchased a majority of the stock, and refused to pay the plaintiff for his services.    These questions were submitted to the jury under the pleadings.    The plaintiff, in the evidence, claimed that he had made a complete verbal bargain with the defendant for a commission of 5 per cent. for the purchase of the stock.    This the defendant denied, and testified that he never made a bargain of any kind with the plaintiff for the purchase of the Mattingly Company ·stock, or any part of it, but that the plaintiff entered into a written agreement with one G. B. Shaw, to the exclusion of the defendant, in the following letter, which .appeared in evidence:

"Dear Sir: Confirming our verbal agreement just made, I desire to say that you are authorized to negotiate with the holders of the entire capital stock of the J. G. Mattingly Company upon a basis averaging to the syndicate whom I represent, now taking options on distillery properties in Kentucky, $130 per share—the capital stock being $300,000. These figures are based upon your assurance that the distillery property is unencumbered; that the corporation owns at least 25,000 barrels of whisky in bond that is unencumbered, and besides has accrued storage and other available net cash assets to the amount of $30,000, any shortage to be made up out of the commission to you. It is the purpose of the syndicate whom I represent to secure options on a number of distillery properties in Kentucky, all maturing July 1st, 1899. Whenever a certain proportion of these properties are secured by option, it is their present purpose to close the option and make the. purchases; but it is not now known to me what proportion of properties

is necessary, nor do I guarantee that when the proportion is acquired, the options will be closed and the purchase made. But I will agree that if you will secure the capital stock of the Mattingly Company, upon the basis aforesaid, or if through you we make a purchase of this stock, whether upon the basis aforesaid or otherwise, then we will pay to you as your commission for services to be rendered by you, five per cent. of $390,000, viz., $19,500. But it is distinctly understood that the commission to be paid you as aforesaid will be due you only in the event the purchase is made of the stock above stated; and by way of suggestion as to the manner to proceed in bringing about a sale, I will say that it will be best for you to put yourself in a position where you can own or control—either yourself or through some friend—the entire capital stock; and when you are thus in shape, you should make a proposition to the syndicate so represented by me, through its agent, the American Trust and Savings Bank of Chicago, under which you propose to sell to said company the said capital stock at the total price of $409,500, which proposition will then be accepted by them, and I will recommend the acceptance of it, and use all reasonable efforts to carry it through. Or, failing in the above, if you will obtain an option under conditions of our option contract on the distillery plant for one hundred and seventy-five thousand dollars and under that option the purchase is made by the syndicate we represent, then, and in that event, but not otherwise, we will pay you a commission of ten thousand dollars. This proposition to be open for thirty days from date. [Signed] G. B. Shaw.
"Correct: H. V. Loving."

The defendant testified that he had no interest in this written agreement with Shaw, and knew nothing of it until the day on which the purchase was made. Thus the vital issue before the jury was whether the contract, under which Loving performed the services for which he sought to recover, was made by him with Stoll or with Shaw. This court held on the former hearing that there was testimony which would authorize the jury to find that the plaintiff accepted this contract in writing from Shaw to the exclusion of Stoll, and, if he did, that he could not recover against Stoll; and, because this question had not been submitted to the jury under proper instructions, the judgment was reversed. The court, on the new trial, after stating that the issue was whether there was an agreement between the plaintiff and defendant, in charging the jury in respect to the letter of January 26, 1899, above set out, said:

"The court tells you that that letter is not a contract between the plaintiff and defendant, and should not be regarded, though I charge you that, even if there was a contract with Mr. Shaw, that fact would not necessarily affect the rights of the plaintiff as against the defendant, Stoll. The subject-matter of agreements for negotiating the sale of property admits of the employment of as many agents as the party pleases."

This statement was probably intended to affirm that an agent may be employed to do a service for as many principals as may see fit to employ him. At the conclusion of the charge counsel excepted to so much of it as "in effect declares that the question is whether there was a contract between Stoll and Loving," and "also to that part of the charge which declares that the written contract with Mr. Shaw does not have the effect of abrogating the principal contract." To this the court replied, "What the court said on that subject will be excepted to." Exceptions were stated on two other points, whereupon the court said, "Let exceptions be entered to what the court said on all those subjects." From what appears in the bill of exceptions, it is clear that the

counsel intended by the exceptions above stated to challenge the instructions of the court with respect to the issue as to who was party to the contract with Loving, and that the court must have so understood it. There was nothing else in the charge to which the exceptions would be pertinent. Counsel for the defendant also, to emphasize their position, submitted a request for a special charge to the jury that, if the plaintiff accepted a contract in writing from Shaw alone, and if Stoll was not bound to fulfill the contract, the jury should find for him. This same special charge was requested at the former trial, and, because the contention embodied in it was not submitted to the jury under proper instructions, the former judgment was reversed. It was not contended by Loving, and is not now contended, that there was more than one contract for the services performed by him. If the contract was with Shaw, the plaintiff was not entitled to recover, but the instruction allowed the jury to find that Loving might have had a contract with Shaw for the services rendered, and also a contract with Stoll for the same services. While it may be conceded that the legal proposition stated by the court is in the abstract sound, it was inapplicable to the controversy, and misleading. Stoll's contention that Loving had made a contract with Shaw to the exclusion of Stoll, and that the work for the payment of which suit was brought was done under that contract, was not submitted to the jury, and it cannot be known from the verdict whether the jury passed on that question, which this court, in its former opinion, pointed out was essential to the proper determination of the controversy. That decision should have been considered as controlling by the trial court, and the failure to submit this question makes it necessary to reverse the judgment and grant a new trial.

The other assignments of error relied upon in the brief for plaintiff in error have been considered, but we think none of them are maintainable.