## MESSINGER v. ANDERSON.

(Circuit Court of Appeals, Sixth Circuit. June 17, 1909.)

### No. 1,916.

**1. JUDGMENT (§ 714\*)—JUDGMENT AS BAR—IDENTITY OF QUESTION IN ISSUE.**

Where the parties in two actions were the same, and the question in issue is identical, as the construction of a provision of a will, the judgment in the first action is a bar to the second if properly pleaded, although different property is the subject-matter of litigation in the two actions.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1242; Dec. Dig. § 714.\*]

**2. APPEAL AND ERROR (§§ 1097, 1195\*)—DECISION AS LAW OF THE CASE.**

Every question of fact or law which was before a Circuit Court of Appeals upon a writ of error and decided by its opinion, whether of affirmance or reversal, is conclusively settled both for such court and the court below in further proceedings in the same action, and the effect of such decision as the law of the case is not changed by the fact that an intermediate judgment by a state court in a suit between the same parties, and based on a contrary decision of the identical question, is pleaded as a bar on a second trial in the lower court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4358–4368, 4661–4665; Dec. Dig. §§ 1097, 1195.\*]

**3. COURTS (§ 365\*)—FEDERAL COURTS—AUTHORITY OF DECISIONS OF STATE COURTS.**

Aside from any effect which the construction of a will may have when seasonably presented, as an adjudication in another case between the same parties when the same question is involved, there is no such duty devolving upon a court of the United States to follow a state court in its construction of a will as in case of the construction of a state statute, unless the opinion of the state court is declaratory of the settled law of the state and not merely a decision upon the particular instrument.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 960; Dec. Dig. § 365.\*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

**4. COURTS (§ 370\*)—FEDERAL COURTS—AUTHORITY OF DECISIONS OF STATE COURTS.**

Where a Circuit Court of Appeals, on a writ of error in an action between citizens of different states, has construed a provision of a will in the exercise of its independent judgment, there being at the time no settled rule of decision in the state applicable thereto, such court will not reconsider and reverse its decision on a subsequent writ of error in the same case, because in the meantime the Supreme Court of the state in a different suit has rendered a contrary decision respecting the same will.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 953; Dec. Dig. § 370.\*]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

H. E. King, Clayton Everett, and O. B. Snider, for plaintiff in error. R. P. Cary and C. H. Trimble, for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and KNAPPEN, District Judge.

LURTON, Circuit Judge. This is the third writ of error in the same case. The action was ejectment to recover real estate. The plaintiff below was Peter Anderson, a grandson of Henry Anderson, and the title turned upon the proper interpretation of the will of Henry Anderson.

Upon the first trial of the case the court below ruled that under that will the plaintiff took no title, and directed a judgment for the defendant. Upon the first writ of error we adjudged that the court below had erroneously construed the will of said Anderson, and that upon a proper interpretation thereof the plaintiff took title to the premises involved. The judgment was accordingly reversed and remanded for a new trial. The opinion of this court was by Severens, Circuit Judge, and is reported in 146 Fed. 929, 77 C. C. A. 179, 7 L. R. A. (N. S.) 1094.

Upon a second trial the court again instructed a verdict for the defendant. This instruction was, however, not based upon the former erroneous interpretation of the will under which plaintiff claimed, but upon the ground that the plaintiff's action was barred by a peculiar statute of limitations operating as a forfeiture of an estate in remainder or reversion, in favor of the person next entitled, for a neglect to pay taxes.

Upon a second writ of error the judgment was reversed, and a new trial awarded. The opinion of this court by Severens, Circuit Judge, fully states the ground upon which the court proceeded. 158 Fed. 250, 254, 85 C. C. A. 468.

Upon the third trial in the court below, the defendant interposed a plea in bar to this action arising out of three judgments of the Ohio court of common pleas for Lucas county, in each of which there had been a judgment adverse to the identical title here set up under the will of Peter Anderson. In the first of these cases, Peter Anderson was sole plaintiff, and the United Realty Company and Rosewell E. Messinger, defendants; the first mentioned claiming under Messinger. In the other two cases the United States Mortgage & Trust Company was plaintiff, and Rosewell E. Messinger and Peter Anderson, defendants. In each case there was involved the title of Peter Anderson under the will of Henry Anderson, and in each action the Ohio court of common pleas adjudged that he took no interest or title under said will, and in each action the judgment, upon that ground, was adverse to Peter Anderson. The last two suits were started while the present suit was pending. They were petitions to foreclose mortgages made by Messinger upon each of the lots and parts of lots involved in this action, except lot No. 33. The judgments of foreclosure in these cases were appealed from by Anderson, and the appeals were pending in the Supreme Court of Ohio when this cause was heard in the court below. Unless there is something exceptional in the statute of Ohio providing for appeals in equity cases, it is obvious that the judgments and decrees in these cases are lacking in that finality essential to support a plea of res adjudicata. We need not stop to look into this matter, because, for the purposes of this case, it is enough to determine the legal effect of the judgment in Anderson v. United Real-

ty Company and Messinger, 79 Ohio St. 23, 86 N. E. 644, as a bar to this suit. If that was effectual, we must reverse the judgment. If it was not, the foreclosure decrees would not be, for the same reason, without going further. Recurring, then, to the judgment in Anderson v. Messinger, which was relied upon in bar of the suit below:

It has been insisted that that action included some of the lots involved in this case, and that, whatever the effect of the judgment in that case as a bar to other property, it is an absolute bar so far as that action sought to recover the identical property sued for in this. This point has no other footing than the fact that the original petition did include part of lot No. 19, and the whole of lot No. 21, which are included among those sued for in this action. But, in an amended reply to the answer of the defendants, Anderson averred that the lots mentioned had been included by clerical mistake; suit for them having been brought in the case then pending in the Circuit Court of the United States, and concluded by saying "that he therefore withdrew from this proceeding all questions involved as to the title or ownership of said above-named lots." In the face of this amendment of the pleadings, there could have been no recovery of any part of either lot No. 19 or lot No. 21, for this was a distinct disavowal of any suit for them. The two suits therefore were for different parcels of land; the title of the plaintiff in each case being under the same will.

The action now under review was begun December 27, 1904. In June, 1905, there was a directed verdict and judgment for the defendant, from which a writ of error was sued out from this court. Pending that writ the same plaintiff brought another suit in the Lucas court of common pleas. On March 31, 1906, there was a verdict and judgment for the defendants in this second suit. In the meantime the writ of error to this court had been argued and submitted; but the opinion of this court was not filed until June 5, 1906, a period of about two months after the decision by the common pleas court. The result in this court was that the judgment of the Circuit Court was reversed and remanded for a new trial, upon the ground that the plaintiff, Peter Anderson, took an estate in remainder upon the death of his father, James H. Anderson, under the will of his grandfather, Henry Anderson.

In December, 1906, a second trial of the case was accordingly had in the Circuit Court, resulting in a second verdict and judgment for the defendant. Although the action in the state court had been decided adversely to the title of Anderson, it was not pleaded as a bar nor offered in evidence for any purpose upon this second trial in the court below. Upon a second writ of error, the judgment of the Circuit Court was again reversed, and the cause remanded for a third trial. It was upon this third trial that the defendant for the first time sought to interpose this state court judgment as an estoppel to this action.

It has been pressed upon us that that defense was waived by the failure to plead and rely upon it upon the second trial of this case, and counsel have cited Theological Seminary v. People, 189 Ill. 439, 447, 59 N. E. 977, and 29 Am. & Eng. Ency. (2d Ed.) 1105.,

It is undoubtedly true that, if one wishes to preclude all inquiry into the truth of the matter by the bar of a former judgment, he must

plead it, or in some way show and rely upon it in evidence. If he does not, but relies upon the merits of the case, he cannot complain that the whole matter is open without regard to the estoppel. Union Bank v. Memphis, 111 Fed. 561, 49 C. C. A. 455; S. P. Rd. Co. v. U. S., 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355; U. S. v. Bliss, 172 U. S. 321, 19 Sup. Ct. 216, 43 L. Ed. 463. This is so even though the former judgment was by the same court. Jourolmon v. Massengill, 86 Tenn. 81, 5 S. W. 719. But whether a failure to plead such an estoppel upon one trial when the defense was available should operate to prevent reliance upon it upon a subsequent trial is a matter of doubt, complicated in this case by the interposition of a second writ of error between the two trials. This question we shall pass by, particularly as the plaintiff below seems to have made no objection upon this ground to the plea and obtained no ruling from the trial court.

It has not escaped attention that the judgment relied upon as a bar to this suit was at the time it was pleaded pending upon writ of error in the Supreme Court of Ohio. The distinction between a review by writ of error of a judgment at law and an appeal in equity cases is elementary. The latter, when perfected, uproots the decree and carries the case up for rehearing upon law and facts, while the former is in the nature of a new action to annul the judgment, which remains in force until reversed. Nashville Ry. Co. v. Bunn (C. C. A.) 168 Fed. 862. Inasmuch as a writ of error did not vacate the former judgment, the weight of opinion seems to be that such a judgment may be received in evidence in support of a plea of res adjudicata. 24 Am. & Eng. Ency. 809 et seq.; Ransom v. City of Pierre, 101 Fed. 665, 669, 41 C. C. A. 585. There is, however, grave danger of injustice if this be the accepted rule, for, if the judgment should be reversed when too late to show the fact, the effect would be to cut off the opposite party from a hearing upon the merits. This difficulty has been met in some jurisdictions by setting aside a judgment which had been influenced by the plea in bar upon the fact of reversal being properly called to the attention of the court having the case under consideration upon writ of error or appeal, or by the court of original jurisdiction, if it had not lost control over the record. Parkhurst v. Burdell, 110 N. Y. 386, 392, 18 N. E. 123, 6 Am. St. Rep. 384; Ransom v. City of Pierre, 101 Fed. 665, 41 C. C. A. 585. Possibly, if the judgment thus influenced had become final, so as to be beyond the control of the court rendering it, relief might be had in equity, as suggested by Judge Thayer in Ransom v. City of Pierre. See, also, Humphreys v. Leggett, 9 How. 296, 311, 13 L. Ed. 145.

In the case before us it appears that after the judgment below the Supreme Court of Ohio affirmed the judgment whose finality is questioned, and that this fact was brought to the attention of the court below upon an application for a new trial. Under such circumstances we shall, for the purpose of this case, assume that this judgment was competent evidence in support of the plea of res adjudicata.

The title of the plaintiff in both actions depended absolutely upon the will of his ancestor, Henry Anderson. Interpreted as he contended, his title was clear and indisputable; construed as the defendant in

both actions insisted, he took nothing under that will, and his actions must inevitably fail.

That a final interpretation of that will in one suit would control in any subsequent litigation between the same parties or privies, in which the same question, under the same conditions, should arise, if presented seasonably, as a former adjudication, is not disputable. That different parcels of land were involved in the two cases would not be material, for if the parties were the same, and the subsequent case should turn upon the same question decided in the former case, under like conditions, that question could not be relitigated if relied upon as an estoppel. Bank v. Beverly, 1 How. 134, 149, 11 L. Ed. 75; New Orleans v. Citizens' Bank, 167 U. S. 371, 396, 17 Sup. Ct. 905, 42 L. Ed. 202; S. P. Rd. Co. v. United States, 168 U. S. 1, 48 18 Sup. Ct. 18, 42 L. Ed. 355; Union Bank v. City of Memphis, 111 Fed. 561, 49 C. C. A. 455.

Thus, in New Orleans v. Citizens' Bank, supra, Mr. Justice White, for the court, said:

"The estoppel resulting from the thing adjudged does not depend upon whether there is the same demand in both cases, but exists, even although there be different demands, when the question upon which the recovery of the second demand depends has, under identical circumstances and conditions, been previously concluded by a judgment between the parties or their privies."

The rule of estoppel relied upon is therefore well settled. The trouble in this case grows out of the fact that there is an apparent conflict of prior adjudications, each of which was pressed upon the court below as governing the judgment upon the third trial of this case in that court. The one was the judgment of the Ohio state court in the case of Anderson v. United Realty Company and Messinger, and the other was the judgment and opinion of this court interpreting and construing the will of Henry Anderson under the first writ of error to this court. The Ohio court held that under the will of Henry Anderson the plaintiff took no interest whatever, and this view has since the trial below been affirmed by the Supreme Court of Ohio. See 79 Ohio St. 23, 86 N. E. 644. This court, in this very case, upon the first writ of error, and before any decision by the Supreme Court of Ohio, decided that the plaintiff took under that will an estate in remainder in all of the property in controversy. 146 Fed. 929, 77 C. C. A. 179, 7 L. R. A. (N. S.) 1094. Which view of the will involved was the court below required to accept as the law of the case?

That every question of law or fact which was before this court upon the first writ of error and decided by its opinion was thereby conclusively settled, both for the court below and for this court upon subsequent writs of error, is not open to serious debate. That matters not decided upon the first writ are open for consideration in the lower court upon a second trial is, of course, true, and many times a new case may be made upon new questions of law or fact, where the mandate does not direct a particular judgment; but so far as questions of fact or law are specifically decided, and the cause remanded for further proceedings, the court below is not at liberty to re-examine any such decided matters, but must proceed in conformity to the mandate as interpreted by the opinion of this court. No other rule is conceiv-

able having regard to the necessity of putting an end to litigation. The cases upon this point are numerous. Among them are: Bissell, etc., Co. v. Goshen Co., 72 Fed. 545, 19 C. C. A. 25, Western Union Tel. Co. v. City of Toledo, 121 Fed. 734, 58 C. C. A. 16, and Stoll v. Loving, 120 Fed. 806, 57 C. C. A. 173, all decided by this court; and Sibbald v. United States, 12 Pet. 488, 492, 9 L. Ed. 1167; In re Sanford Tool Company, 160 U. S. 247, 259, 16 Sup. Ct. 291, 40 L. Ed. 414; Roberts v. Cooper, 20 How. 467, 481, 15 L. Ed. 969; Skillern v. May, 6 Cranch, 267, 3 L. Ed. 220.

In Skillern v. May it was discovered after the case had been reversed and remanded for further proceedings that the cause was one not within the jurisdiction of the circuit; but, upon a certificate of division of opinion upon the right of the Circuit Court to dismiss the suit for this reason, the Supreme Court answered that, after the merits of the case had been decided, it was too late for the Circuit Court to do anything other than carry into execution that decree.

The finality of the decision of this court, so far as it did decide any question, is not affected by the fact that it was a judgment reversing the lower court and directing a new trial. The authorities are numerous. We cite a few only: Mutual Life Ins. Co. v. Hill, 193 U. S. 551, 553, 24 Sup. Ct. 538, 48 L. Ed. 788; Western Union Tel. Co. v. City of Toledo, 121 Fed. 734, 58 C. C. A. 16; Stoll v. Loving, 120 Fed. 806, 808, 57 C. C. A. 173; Tyler v. Magwire, 17 Wall. 254, 282, 283, 21 L. Ed. 576; Young v. Frost, 1 Md. 394; Haley v. Kilpatrick, 104 Fed. 647, 44 C. C. A. 102; Orient Ins. Co. v. Leonard, 120 Fed. 808, 57 C. C. A. 176; Mathews v. Columbia Bank, 100 Fed. 393, 40 C. C. A. 444; Theological Seminary v. People, 189 Ill., 439, 452, 59 N. E. 977; Leese v. Clark, 20 Cal. 387.

In the case last cited, Mr. Justice Field, after referring to the finality of the adjudication of the Supreme Court after it had lost control by issuance of a mandate, said of the effect of a judgment of reversal upon points decided that:

"If, upon the construction of the contract supposed, this court reverses the judgment of the court below, and orders a new trial, the decision is equally conclusive as to the principles which shall govern on the retrial. It is just as final to that extent as a decision directing a particular judgment to be entered is as to the character of such judgment. The court cannot recall the case, and reverse its decision, after the remittitur is issued. It has determined the principles of law which shall govern, and, having thus determined, its jurisdiction in that respect is gone; and, if the new trial is had in accordance with its decision, no error can be alleged in the action of the court below."

Counsel for plaintiffs in error have insisted that a judgment of reversal remanding a case for new trial is not a judgment which can be set up as a bar to another suit on the same case, and have cited Aurora City v. West, 7 Wall. 82, 92, 93, 19 L. Ed. 42. The reporter's headnote is misleading. The case supports no such general proposition. The question, as may be seen from an examination of the statement and opinion, arose upon a demurrer to a rejoinder, setting up merely that a judgment in an inferior state court had been reversed and remanded. The holding was that a rejoinder was not good which merely set up a judgment of reversal and a remander for further proceed-

ings, without any comment as to what the question was which was decided by the superior court.

Undoubtedly a judgment of reversal may leave open many questions upon which an identical verdict may result upon another trial. In Mutual Life Insurance Company v. Hill, cited above, it appeared that upon a former writ of error a judgment in favor of the plaintiff below was reversed upon the ground that the record disclosed "an abandonment of the insurance contract." Upon the second writ of error it was insisted that the only question left open was a submission of this question of abandonment, and that the decision of the Supreme Court was "an adjudication that the plaintiff had a right to recover unless it was shown that there had been an abandonment of the insurance contract." Referring to this matter, and to its former decision, the court said:

"That decision was based upon the averments of the pleadings, and these pleadings were amended after the judgment was reversed and the case returned to the trial court. Clearly the contention of the plaintiffs is not sustainable. When a case is presented to an appellate court, it is not obliged to consider and decide all the questions then suggested or which may be supposed likely to arise in the further progress of the litigation. If it finds that in one respect an error has been committed so substantial as to require a reversal of the judgment, it may order a reversal without entering into any inquiry or determination of other questions. While undoubtedly an affirmance of a judgment is to be considered an adjudication by the appellate court that none of the claims of error are well founded—even though all are not specifically referred to in the opinion—yet no such conclusion follows in case of a reversal. It is impossible to foretell what shape the second trial may take, or what questions may then be presented. Hence the rule is that a judgment of reversal is not necessarily an adjudication by the appellate court of any other than the questions in terms discussed and decided. An actual decision of any question settles the law in respect thereto for future action in the case. Here, after one judgment on the pleadings had been set aside, on amended pleadings a trial was had, quite a volume of testimony presented, and a second judgment entered. That judgment is now before us for review, and all questions which appear upon the record and have not already been decided are open for consideration."

Upon the second writ of error in this very case, we were urged to reconsider the decision in the first writ of error as to the meaning and effect of Henry Anderson's will, as applicable to the title here in controversy. Judge Severens, for the court, said:

"We have been invited by counsel for defendant to reconsider the question of the construction of Henry Anderson's will. We must decline to do this. The questions there decided are matters adjudged and have become the law of the case. When the former writ of error was disposed of, the questions of law in the case were settled, and we have now no authority to redetermine them. This is the established doctrine which governs the federal courts and is quite generally accepted in other courts. This court has recognized and applied the rule in previous cases." 158 Fed. 250, 252, 85 C. C. A. 468, 470.

We have been again urged to re-examine the question of the interpretation of Henry Anderson's will, upon the theory that the question is one of local law, and that we should therefore readjust our views to conform to the construction of that will by the Supreme Court of Ohio, as announced in its opinion in Anderson v. Messinger since our own interpretation upon the first and second writs of error.

Aside from any effect which the construction of a will by one court may have, when seasonably presented, as an adjudication in another case between the same parties, when the same question is involved, there is no such duty devolving upon a court of the United States to follow a state court in their construction of a will, as they do in the construction of a statute. Lane v. Vick, 3 How. 464, 11 L. Ed. 681; Barber v. Pittsburg, etc., Ry., 166 U. S. 83, 99, 100, 103, 104, 17 Sup. Ct. 488, 41 L. Ed. 925.

In Barber v. Pittsburg Railway, cited above, the case involved the construction of a clause in a will which had been theretofore construed by the Supreme Court of Pennsylvania in a former action of ejectment for the same land and between the same parties. The former suit was adverse to the plaintiff, but was not conclusive under the law of the state, because under the law of that state a single judgment in eject-ment was not a bar to a second action. This second action was brought in the Circuit Court of the United States. There was a judgment there for the defendants; that court following the construction of the will by the Supreme Court of the state. The case was taken to the Circuit Court of Appeals upon a writ of error. The Court certified to the Supreme Court this question, and another, not necessary to set out:

"Is the decision of the Supreme Court of Pennsylvania, before referred to, conclusive?"

In reference to this question the Supreme Court said:

"The question whether the opinion of the Supreme Court of the state in the former action is conclusive evidence of the law of Pennsylvania in a court of the United States depends upon the further question whether the opinion is declaratory of the settled law of Pennsylvania as to the effect of such devises, or is a decision upon the construction of this particular devise. When the construction of certain words in deeds or wills of real estate has become a settled rule of property in a state, that construction is to be followed by the courts of the United States in determining the title to land within the state, whether between the same or between other parties. Jackson v. Chew, 12 Wheat. 153, 167, 6 L. Ed. 583; Henderson v. Griffin, 5 Pet. 151, 8 L. Ed. 79; Suydam v. Williamson, 24 How. 427, 15 L. Ed. 978; Burgess v. Seligman, 107 U. S. 20, 33, 2 Sup. Ct. 10, 27 L. Ed. 359. But a single decision of the highest court of a state upon the construction of the words of a particular devise is not conclusive evidence of the law of the state, in a case in a court of the United States, involving the construction of the same or like words, between other parties, or even between the same parties or their privies, unless presented under such circumstances as to be an adjudication of their rights. Lane v. Vick, 3 How. 464, 11 L. Ed. 681; Vick v. Vicksburg, 1 How. (Miss.) 379, 31 Am. Dec. 167; Homer v. Brown, 16 How. 354, 14 L. Ed. 970; Brown v. Lawrence, 3 Cush. (Mass.) 390; Gibson v. Lyon, 115 U. S. 439, 446, 6 Sup. Ct. 129, 29 L. Ed. 440. It becomes important therefore that the opinion of the Supreme Court of Pennsylvania in the former action of ejectment should be carefully examined and compared with the previous judgments of that court."

The court thereupon made an independent examination of the opinions of the Supreme Court of the state, for the purpose of comparing them with the opinion upon the particular clause involved with a view to seeing whether this last opinion was declaratory of the previously settled law of the state so as to amount to a rule of property. The result was that the court decided that such examination led them to the conclusion that "the decision of the Supreme Court of Pennsyl-

vania upon the construction of the will of James S. Stevenson is not conclusive, and that the first question certified must be answered in the negative."

That this court did not depart from any well-settled line of decisions by the Supreme Court of Ohio, applicable to the construction of the devise in the will of Henry Anderson which was involved, will be quite apparent upon examination of the opinion of this court, as reported in 146 Fed. 929, 77 C. C. A. 179, 7 L. R. A. (N. S.) 1094, and a comparison with the opinion of the Supreme Court of Ohio construing the same clause, as reported in 79 Ohio St. 23, 86 N. E. 644.

We found in the case of Shaw v. Hoard, 18 Ohio St. 228, an exposition of the applicable law of Ohio, which the opinion of the Supreme Court of Ohio, by Judge Summers concedes, "supports the contention of the plaintiff." We concluded from an examination of later cases in that court that, while in some particulars not relevant to the will of Henry Anderson, Shaw v. Hoard had been distinguished, it had not been overruled. The Supreme Court of Ohio, in Anderson v. Messinger, seems to conclude that Shaw v. Hoard had been so far modified or distinguished as not to be conclusive evidence of the law in Ohio. Assuming for the purpose of this case that the effect of later decisions which did not expressly overrule that case was to unsettle it as a rule of decision, it clearly left the law of Ohio, considered as a local rule of property applicable to the words of the devise involved, in such an uncertain state as to compel this court to apply to the will the settled rules of the common law applicable. Upon this aspect of the matter Judge Severens said that:

"If it should be held that the rule of construction is not settled, this court would decide the question upon its own understanding of the law applicable to it."

But it has been urged that we may not look to the opinion of the Ohio court for the purpose of determining the law of the case, but only to the syllabi of the case. The Ohio court has long since adopted a rule that the law of the case by which the court is bound is that stated in the syllabi of the case. See Rule 6, 5 Ohio St. page 7 of the preface, and same rule, page 10, preface, of 73 Ohio St. (67 N. E. vii).

If we accede to this, we find no rule of property there stated which necessarily conflicts with the opinion of this court. That syllabus reads as follows:

"Where, in a will, there is a devise to a son, and if he dies without lineal descendants, living at the time of his decease, then over, these words are not, by themselves, without assistance from other parts of the will, sufficient to create an estate by implication in the lineal descendants; but the son takes a fee defensible upon his death, without lineal descendants, living at the time of his decease, and, in the event of lineal descendants living at the time of the son's death, his fee becomes absolute, and such descendants have no interest under the will as against his grantee."

This court found "assistance from other parts of the will," in reaching the conclusion we did, as will be seen by consulting the opinion. It will also be noticed that the opinion of the Ohio court, as exhibited by that of Judge Summers, does not deal with circumstances to which we attached importance.

But, if we confine ourselves to this syllabus, it is impossible to say that from it alone we should be able to treat the decision as a declaration of the settled law of Ohio, constituting a rule of property, which this court ought to follow. It is apparently no more than an interpretation of a particular will, and as such, under the cases cited above, is not such a decision as we are under obligation to follow as a local rule or property.

There is, however, another reason why we should not now, if we had the power, retract our own opinion and adopt the subsequent view of the Ohio Supreme Court. This is found in the fact that there was then no settled line of decisions by the Ohio court applicable to the devise we were called upon to construe. This was a controversy between citizens of different states, and when, as was our duty, we reached a conclusion upon common-law principles in the exercise of our independent judgment, we are now under no obligation to recede from that opinion merely because in another case the Supreme Court of Ohio has since reached a different result. Burgess v. Seligman, 107 U. S. 20, 33, 35, 2 Sup. Ct. 10, 27 L. Ed. 359.

A situation in principle much like this was presented in Burgess v. Seligman, cited above. A question arose as to the liability of shareholders of a corporation for its debts. under a Missouri statute. In an action in the Circuit Court of the United States at the suit of a creditor, the court held that under this statute persons holding shares as collateral security for a debt due from the corporation were not liable. In another case upon the suit of a different plaintiff, the Supreme Court of Missouri, after the decision of the Circuit Court of the United States, made a contrary decision against the same stockholders. It was held that upon the writ of error to the Circuit Court the Supreme Court was not bound to reverse the Circuit Court and follow this subsequent decision of the Supreme Court of Missouri. Among other things, the court said:

"The federal courts have an independent jurisdiction in the administration of state laws, co-ordinate with, and not subordinate to, that of the state courts, and are bound to exercise their own judgment as to the meaning and effect of those laws. The existence of two co-ordinate jurisdictions in the same territory is peculiar, and the results would be anomalous and inconvenient but for the exercise of mutual respect and deference. Since the ordinary administration of the law is carried on by the state courts, it necessarily happens that by the course of their decisions certain rules are established which become rules of property and action in the state, and have all the effect of law, and which it would be wrong to disturb. This is especially true with regard to the law of real estate and the construction of state Constitutions and statutes. Such established rules are always regarded by the federal courts, no less than by the state courts themselves, as authoritative declarations of what the law is; but where the law has not been thus settled, it is the right and duty of the federal courts to exercise their own judgment, as they also always do in reference to the doctrines of commercial law and general jurisprudence.. So, when contracts and transactions have been entered into, and rights have accrued thereon under a particular state of decisions, or when there has been no decision, of the state tribunals, the federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued; but, even in such cases, for the sake of harmony, and to avoid confusion, the federal courts will lean toward an agreement of views with the state courts if the question seems

to them balanced with doubt. Acting on these principles, founded as they are on comity and good sense, the courts of the United States, without sacrificing their own dignity as independent tribunals, endeavor to avoid, and in most cases do avoid, any unseemly conflict with the well-considered decisions of the state courts. As, however, the very object of giving to the national courts jurisdiction to administer the laws of the states in controversies between the citizens of different states was to institute independent tribunals which it might be supposed would be unaffected by local prejudices and sectional views, it would be a dereliction of their duty not to exercise an independent judgment in cases not foreclosed by previous adjudication. As this matter has received our special consideration, we have endeavored thus briefly to state our views with distinctness, in order to obviate any misapprehensions that may arise from language and expressions used in previous decisions. * * *.

"In the present case, as already observed, when the transactions in question took place, and when the decision of the Circuit Court was rendered, not only was there no settled construction of the statute on the point under consideration, but the Missouri cases referred to arose upon the identical transactions which the Circuit Court was called upon, and which we are now called upon, to consider. It can hardly be contended that the federal court was to wait for the state courts to decide the merits of the controversy and then simply register their decision, or that the judgment of the Circuit Court should be reversed merely because the state court has since adopted a different view. If we could see fair and reasonable ground to acquiesce in that view, we should gladly do so; but, in the exercise of that independent judgment which it is our duty to apply to the case, we are forced to a different conclusion. Pease v. Peck, 18 How. 595, 15 L. Ed. 518, and Morgan v. Curtenius, 20 How. 1, 15 L. Ed. 823, in which the opinions of the court were delivered by Mr. Justice Grier, are previously in point."

In Great Southern Fire Proof Hotel Co. v. Jones, 116 Fed. 793, 54 C. C. A. 165, affirmed in 193 U. S. 532, 24 Sup. Ct. 576, 48 L. Ed. 778, this court declined to follow the decision of the Supreme Court of Ohio holding a mechanic lien statute invalid in a suit involving rights of citizens of another state under contracts made before such decision was rendered. See, also, Louisville Trust Co. v. City of Cincinnati, 76 Fed. 296, 22 C. C. A. 334.

We do not wish to appear as passing over without notice the cases of Western Union Tel. Co. v. Poe (C. C.) 64 Fed. 9, Sanford v. Poe, 69 Fed. 546, 16 C. C. A. 305, 60 L. R. A. 641, and Roberts v. Lewis, 153 U. S. 367, 14 Sup. Ct. 945, 38 L. Ed. 747. It is enough to say of the two Poe Cases that they involved the construction of a statute of Ohio, relating to the taxation of corporations. Upon a demurrer, Taft, Circuit Judge, sitting on the circuit, overruled the demurrer and held the statute void as in conflict with the Ohio Constitution. Afterwards, and before a final decree, the Supreme Court of Ohio held the act valid. Thereupon Judge Taft withdrew his former judgment and followed that of the Ohio court. This we affirmed in 69 Fed. 546, 16 C. C. A. 305, 60 L. R. A. 641. There is no parallel between this and the Poe Cases. Judge Taft retracted his own and adopted the opinion of the Supreme Court of Ohio before a final judgment was entered, and he merely recognized before his own final conclusion the controlling effect of the decision of the Supreme Court of Ohio.

In Roberts v. Lewis, cited above, the Supreme Court reversed a former construction of the will involved in Giles v. Little, 104 U. S. 291, 26 L. Ed. 745. The meaning of the will turned upon the bearing of a Nebraska statute. After Giles v. Little, the Supreme Court of

Nebraska, in another case between other parties, but involving the same will, put a different construction upon the will. In Roberts v. Lewis, a third suit involving still other property dependent on the same will, but between still other parties, the court overruled Giles v. Little, and followed the decision of the Nebraska court, not because of any expressed obligation to abandon its own view, first taken, in deference to the later construction of the Nebraska court, but because it was convinced of error in its own opinion concerning the effect of the applicable Nebraska statute—an error due to the omission of a word in the copy of the statute before the Supreme Court. To that omitted word the Nebraska court gave weight in the meaning of the statute, and its bearing upon the meaning of the testator. This the Supreme Court of the United States thought required the overruling of its former opinion. There was no question of res adjudicata or law of the case involved.

But, aside from what we have said touching the insistence that we should reverse ourselves and follow the later decision of the Ohio Supreme Court, we have upon a second writ of error no power to modify or re-examine the former judgment as to the will of Henry Anderson. It is not, as respects this case, a question of stare decisis, but one of res adjudicata. When our mandate went down and the term ended, that adjudication was beyond recall. Whatever of fact or law was then adjudged is beyond re-examination under any subsequent writ of error in the same case. The cases cited above determine this. To these we add: Loeser v. Savings Bank, 163 Fed. 212, 89 C. C. A. 642; Clark v. Keith, 106 U. S. 464, 1 Sup. Ct. 568, 27 L. Ed. 302; Illinois v. I. C. R. Co., 184 U. S. 77, 91, 22 Sup. Ct. 300, 46 L. Ed. 440; Ellis v. Northern Pac. R. Co., 80 Wis. 459, 50 N. W. 397, 27 Am. St. Rep. 44; Haley v. Kilpatrick, 104 Fed. 647, 44 C. C. A. 102.

That the question arose in the court below under a plea of res adjudicata does not alter the principle involved. To give effect to that defense required that court to disregard the mandate and adjudication of this court. If this court is to regard that defense, it will require us to reverse our own former decision. The way the matter came up is peculiar; but the rule which applies is not thereby abrogated. "The law of the case" did not cease to be the law of the case because of the decision of some other court, in another suit between the same parties, involving other land under the same title.

There are cases in which the question of res adjudicata arose in the same way. Ellis v. Northern Pac. R. Co., 80 Wis. 459, 50 N. W. 397, 27 Am. St. Rep. 44; Haley v. Kilpatrick, 104 Fed. 647, 44 C. C. A. 102; Theological Seminary v. People, 189 Ill. 439, 446, 447, 59 N. E. 977.

Ellis v. Northern Pac. R. Co. was an action to quiet title to land. The bill was by Ellis against the railroad company, and set out that the railroad company claimed title under a deed of donation from Douglas county, which deed was attacked as made without authority. A demurrer was filed by the railroad company, and this, upon a writ of error, was overruled; the court holding that the deed was

without authority of law and invalid. The case was remanded for further proceedings. After the commencement of the suit mentioned in the state court, Ellis brought another suit, to quiet his title to other lands held by the railroad company under the same instrument of donation, in the Circuit Court of the United States. In this latter case the judgment of the Supreme Court of Wisconsin, in the first case between the same parties, was not pleaded as an estoppel. The case was therefore tried out upon its merits, and the deed of donation held valid and the title of the railroad company good. Thereupon the railroad company asked leave to amend its answer in the first case for the purpose of setting up this judgment of the Circuit Court of the United States as an estoppel to that action. Leave to amend for this purpose was denied. Upon the trial upon pleadings and evidence the record in this adjudication of the Circuit Court of the United States was offered in evidence, which offer was denied. It then appearing that the only title of the railroad company was under the agreement of donation, its title was held void; the court holding that the decision of the Supreme Court upon the writ of error was res adjudicata in the action. Thereupon a second writ of error was sued out, under which the Supreme Court of Wisconsin held that its decision upon the former writ was conclusive upon the question of the validity of the donation upon which the title of this railroad company alone depended. The Wisconsin Supreme Court said:

"The decision of this court upon a demurrer upon the questions properly involved cannot be reviewed by the Circuit Court, nor, indeed, by this court, save upon motion for rehearing. Such questions are finally decided and settled for that case, and, as between the parties to that litigation, for all time. This view of the law decides this case. The complaint charged the appellant's alleged title to be just what the proofs now before us show it to be, and this court, prior to the judgment in the United States court, finally decided that such alleged title was worthless. The question was no longer an open one, and the Circuit Court was right in ruling out the record of the action in the United States court and rendering judgment for the plaintiff."

A writ of error was sued out from the Supreme Court of the United States, upon the theory that the denial of the plea of res adjudicata involved the validity and effect of the decision of the federal courts when pleaded in bar of an action in a state court between the same parties, in respect to other property held under the same claim and title as that adjudged valid by the federal court. The writ was dismissed as not involving any federal question; the Supreme Court of Wisconsin having rested its decision upon the proposition that the rights of the parties had been adjudged upon the first writ of error, "and that it was itself, as the parties were, bound by its former judgment." Referring to the ground upon which the Supreme Court of Wisconsin had decided the case, the court said:

"The judgment before us was rendered in accordance with well-settled principles of general law, not involving any federal question, and did not deny to the decree of the Circuit Court the effect which would be accorded under similar circumstances to the judgments and decrees of the state court." Northern Pac. R. Co. v. Ellis, 144 U. S. 458, 465, 12 Sup. Ct. 724, 36 L. Ed. 504.

In Great Western Telegraph Co. v. Burnham, 162 U. S. 339, 343, 16 Sup. Ct. 850, 852, 40 L. Ed. 991, Mr. Justice Gray, referring to Northern Pacific R. Co. v. Ellis, cited above, said of the decision of the Supreme Court of Wisconsin in holding itself and the parties concluded by the point decided upon a former writ:

"In so doing that court has done no more than this court has always done, or than is necessary to enable an appellate court to perform its duties satisfactorily and efficiently, which would be impossible if a question once considered and decided by it were to be litigated anew in the same case upon any new and subsequent appeal. Washington Bridge v. Stewart, 3 How. 413, 425, 11 L. Ed. 658; Roberts v. Cooper, 20 How. · 467, 481, 15 L. Ed. 969; Clark v. Keith, 106 U. S. 464, 1 Sup. Ct. 568, 27 L. Ed. 302; Chaffin v. Taylor, 116 U. S. 567, 6 Sup. Ct. 518, 29 L. Ed. 727; Sanford Co., Petitioner, 160 U. S. 247, 259, 16 Sup. Ct. 291, 40 L. Ed. 414."

In Haley v. Kilpatrick, 104 Fed. 647, 44 C. C. A. 102, the court said:

"This is the second appearance of this case in this court. * * * The law of the case was settled in the opinion of the court when the case was first here. It remains the law of the case in this court, the decree of the state court in another and different case to the contrary notwithstanding."

The other assignments of error are overruled. Some of them relate to other questions of fact or law decided upon one or the other of the former writs of error and are not now open for reexamination. The others have no merit and need no special consideration.

The judgment of the court below is without error, and must be affirmed.