James Masterson et al. v. G. W. Todd et al.

No. 157.

**1. Conditional Certificate in Fisher & Miller's Colony.**—A certificate granted by the commissioner of Fisher & Miller's Colony, April 16, 1849, which contained the one condition upon its face, that the grantee should settle within the colony in two years from its date, was subject to sale and transfer in 1850. Graham v. Henry, 17 Texas, 167. For nonperformance of the condition all rights under it may have been lost.

**2. Same.**—The Act of February 1, 1854, for the relief of the colonists of Fisher & Miller's Colony, removed the condition and its effects.

**3. Land Certificates — Duplicate for Relocation.** — The certificate was returned to the Land Office in 1860, no field notes having been returned. On December 14, 1876, a duplicate copy was issued for relocation under Act of June 2, 1873, certificate to copy declaring former locations forfeited, and as required by said act, recited that it was given for relocation, without prejudice to the rights of any person by virtue of said certificate. *Held:*

1. That purchasers of such certificate, it being personal property, from the fact that they purchased it without notice of a previous assignment, could not become entitled to the land located under it against the owners under the previous assignments.

2. They could hold it against the older title on the ground of estoppel, if such existed. Dodge v. Litter, 73 Texas, 322. The plaintiffs and those under whom they hold had nothing to do with obtaining the duplicate from the Land Office; such grounds did not exist.

3. The required clause in the duplicate, that the issuance was without prejudice to the rights of other persons by virtue of the certificate, had the effect to cause a purchaser of it to take it subject to any better title. The doctrine of innocent purchaser did not apply. It was error to submit it.

4. Under these circumstances defendants were not precluded from showing good faith that would entitle them to improvements.

**4. Charge of Court on Burden of Proof—Ancient Instruments.** Where a deed is admissible as an ancient instrument, the burden of proving it a forgery is upon the party attacking it, notwithstanding his affidavit. A charge to the jury, that unless they were satisfied that the instrument was signed by the person it purports to be signed by, to find for the defendants, required of plaintiffs a higher standard of proof than a charge that the burden of proof was on them. Emerson v. Mills, 83 Texas, 385.

**5. Sufficiency of Deed to Support Limitations.** — An instrument conveying one-half of 640 acres certificate, and containing a clause authorizing the grantee to have the land surveyed, is not sufficient to meet the requirements of the five years statute. Nothing in the instrument itself, or in anything referred to therein, would identify any land.

6. **Duly Recorded — Absence of Notarial Seal to Acknowledgment.**—A deed can not be held to be duly recorded when the certificate of acknowledgment is not attested by the seal of the officer.

Appeal from Mason. Tried below before Hon. W. M. Allison.

*Sidon Harris*, for appellants.

*Marshall Fulton*, for appellees.

JAMES, Chief Justice.—The suit was by appellants to recover survey 107, of 320 acres, patented to the heirs of Christian Moeller, deceased.

The history of the certificate appears to be this: On April 16, 1849, a certificate was granted by the commissioner for Fisher & Miller's Colony to Dorothea Petri, only heir of Christian Moeller, deceased, subject to the following condition expressed upon its face, viz., that she should within two years from its date settle within the limits of the colony, and recited that she had selected and designated sections 634 and 635 in Giddings District. There does not appear to have been any settlement by her upon the land.

The archives of the General Land Office show that the certificate was returned to the office in 1860 by Henry F. Fisher. No field notes having been returned, the Commissioner of the General Land Office, on December 14, 1876, issued a copy of the certificate for relocation under the act of June 2, 1873, his certificate appended thereto declaring that the former location had been forfeited for nonreturn of the field notes, and reciting, as required by the said Act of 1873, that the copy was given for said purpose without any prejudice to the rights of any person by virtue of said certificate. The duplicate of the certificate was obtained by H. R. Biberstein, under written authority from Johann Petri, who claimed to be an heir of Dorothea Petri. Biberstein obtained a conveyance of the certificate from Johann Petri, Sr., and Johann Petri, Jr., on December 21, 1876, and on April 23, 1877, he conveyed to H. M. Holmes and G. W. Todd one-half of the certificate, authorizing them to locate their half. They located the survey in question, and the field notes, expressing that the survey was made for Holmes and Todd, bear date April 23, 1877, and patent issued May 7, 1877, to the "heirs of Dorothea Petri."

The plaintiff's title to said survey was under Henry F. Fisher. They introduced a chain of title for the purpose of showing title in Fisher, as follows: A deed from Dorothea Petri and John Petri, her husband, to Anton Peiper, dated February 4, 1850, at New Braunfels; filed for record in Mason County on September 27, 1887.

A deed from Anton Peiper to M. A. Dooley, dated March 19, 1851; recorded in Mason County September 28, 1887.

A deed from M. A. Dooley to Henry F. Fisher, dated January 4, 1855; recorded September 28, 1887.

To the first of said transfers an affidavit of forgery was interposed.

The defendants' title to the certificate was, as before stated, under a conveyance from John Petri, Sr., and John Petri, Jr., who claimed to be the sole heirs of Dorothea Petri, on December 21, 1876.

The defendants pleaded not guilty, five and ten years limitations, and improvements. They also set up the defense of purchaser for value without notice.

This statement is sufficient to an understanding of the case.

Appellees contend, that the certificate was not subject to sale in 1850, and therefore plaintiffs have no title. We do not agree to this proposition. The certificate states upon its face the only restriction or condition it was subject to, which was that the grantee, Dorothea Petri, should within two years from its date settle within the limits of the colony. This had the effect of making the certificate a conditional one, and for nonperformance of the condition all rights under it may have been lost; but nowhere do we find any restraint upon its alienation. A transfer by Dorothea Petri was a valid conveyance of her right to the certificate, and her heirs or subsequent assigns can not claim that it was void. Graham v. Henry, 17 Texas, 167, is decisive of this question. The Act of February 1, 1854, for the relief of colonists of Fisher & Miller's Colony, removed the condition and its effect, and authorized the location of such certificates within the limits of the colony except on sections reserved for the State, and authorized patents to issue to the colonists, their heirs, or assigns.

The transfer to Peiper in 1850 was not void.

Another question presented by appellees is, that assuming the transfer from Dorothea Petri to Peiper to be valid, they, the defendants, are purchasers without notice of the transfer and for a valuable consideration. This issue was presented to the jury by the following charge:

"If from the evidence you should find that Johann and Dorothea Petri sold and transferred land certificate number 152, issued to Dorothea Petri, as heir of Christian Moeller, to Anton Peiper, and made a written transfer of same, and further find that the transfer to said certificate to said Anton Peiper was not filed in the General Land Office nor recorded in Mason County until after the land now sued for had passed into the possession of Holmes & Todd, then, if you find that Holmes & Todd purchased the land certificate in question from H. R. Biberstein, paying him for same a valuable consideration, and that at the time said Biberstein sold and by an instrument in writing transferred 320 acres of said certificate to Holmes & Todd, that the land in question had been surveyed by virtue of said certificate, and the field notes for same recorded in the surveyor's office of Mason County, and that said Holmes & Todd at said

time had no knowledge or information of any previous transfer of said certificate to Anton Peiper, or no such notice as would have put a prudent man upon inquiry, and if pursued would have led to a knowledge of the fact, then, if you so find these to be the facts, you are instructed that Holmes & Todd would be innocent purchasers for value, and your verdict should be for defendants.''

The evidence shows clearly that Todd & Holmes purchased the certificate and then located it. It was personal property when they acquired it; and being such, they could not from the simple fact that they purchased it without notice of a previous assignment, and paid for it, become entitled to it against the owner. They could, however, hold it against the older title, on ground of estoppel, if such ground existed. Dodge v. Litter, 73 Texas, 322. We do not see that there was any more evidence of an estoppel in this case than there was in the one last cited. Furthermore, the original had been in the General Land Office since 1860, and the plaintiffs and those under whom they hold are not charged with any conduct whereby they can be held to be estopped. The duplicate was obtained from the Land Office by others, and with the acts of these persons the representatives of Fisher had nothing to do.

The Act of 1873, under which the duplicate was extended, required it to state that the issuance was without prejudice to the rights of other persons by virtue of the certificate, and this did appear upon the face of the duplicate. The effect of this clause seems to us to have been to cause a purchaser of it to take it subject to any better title. The doctrine of innocent purchaser did not apply in this case, and there was error in submitting it as an issue. Nor do we see how any purchaser under Holmes & Todd could be in a better position. As their title consisted of a deed to the certificate prior to its location, such purchaser would necessarily have notice of the recital in the certificate, their title consisting of a transfer of the same, and they certainly would be charged with notice of the statute which required the certificate to be issued in such manner as to save the rights under it by reason of an older title.

What is here said should not be understood as precluding defendants from showing the good faith that would entitle them to improvements.

The defendants brought into question the genuineness of the deed from Dorothea Petri to Anton Peiper, which was the basis of plaintiffs' title. If this instrument is admitted as an ancient instrument, the burden of proof rests on the defendants to establish the forgery, notwithstanding the affidavit; otherwise, if its presentation does not answer the requisites of an ancient instrument. The original is before us, and in connection with the evidence there are circumstances showing that the proper custody for it was that of Henry F. Fisher. Conveyances following its execution purported to vest the title to it in Henry F. Fisher, and the archives of the General Land Office, presumably the file relating to this

certificate, disclose the fact that Fisher filed the certificate in the office in 1860. Upon this showing we think the instrument was entitled to be admitted in evidence as an ancient instrument, and the charge which instructed the jury that unless they were *satisfied* from the evidence that said instrument was in fact signed by Dorothea and John Petri, their verdict should be for the defendants, really required of plaintiffs a higher standard of proof than if they had been charged that the burden of proof was on them.  Emerson v. Mills, 83 Texas, 385; Fordyce v. Swanson, 2 Texas Civ. App., 24.

On the subject of limitations, we are of opinion that the deed to Holmes & Todd was not such a deed as would meet the requirements of the five years statute.  The instrument was a conveyance of one-half of the 640 acres certificate, and contained a clause authorizing the said Holmes & Todd to have the land surveyed for them.  This was in effect a conveyance of 320 acres, leaving its identity and location to be defined in the future by the acts of Holmes & Todd.  The instrument would have to be aided by extrinsic parol testimony in order to ascertain what land was its subject matter.  Nothing in the instrument itself, or in anything referred to therein, would identify any land.

In Cantagrel v. Von Lupin, 58 Texas, 570, the deed was for all the land the vendor owned in Harris County.  This was held sufficient, because there was upon record a deed to the vendor for the land in controversy.

In Bowles v. Price, 66 Texas, 724, the deed was a conveyance of all the interest acquired by the vendor under a sheriff's deed.  The court said:  " By reference to the latter, which the evidence shows was of record in the county, it is seen that this was the entire interest in the land. Such a deed, we think, is notice to the world that the party in possession under it claims the whole land, and if duly registered, is sufficient, when accompanied by the other requirements of the statute of limitations of five years, to give title thereunder.''

Here looking to the records of the county there is a total want of description.  This being the only muniment of title held by the defendant Todd, he could not avail himself of the five years statute under any state of facts.

It appears that the deed from Gamel to Barrett, of date November 15, 1888, did not have the notary's seal to the acknowledgment until it was placed there during the trial, by leave of the court.  Its registration without the seal of the notary to the acknowledgment was not due registration in the meaning of the statute.

We will not discuss other questions raised, as to do so would require comment on the testimony, which, in view of another trial on which the facts may be different, would be useless or improper.

We are asked by appellants to reverse and render judgment. The cases cited by appellants as authority for this simply hold the familiar rule, that where the evidence is by depositions, and the witnesses are not impeached, the findings of the jury on the facts are not regarded as conclusive. We have no power to render a judgment on the facts in causes where there is a jury.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered January 8, 1894.