TOMPKINS et al. v. CREIGHTON-Mc-
SHANE OIL CO.†

(Court of Civil Appeals of Texas. Galveston.
Dec. 12, 1911. Rehearing Denied
Jan. 4, 1912.)

1. JUDGMENT (§ 829*)—RES JUDICATA—FI-
NALITY OF JUDGMENT.

A finding by the United States Circuit
Court of Appeals, in trespass to try title, that
the evidence made a question for the jury, for
which the case was remanded for a new trial
in the Circuit Court, where the plaintiff dis-
missed the case and brought a new action in
the state court, is without effect upon the trial
in the state court.

[Ed. Note.—For other cases, see Judgment,
Cent. Dig. §§ 1510–1515; Dec. Dig. § 829.*]

2. TRIAL (§ 143*)—TAKING CASE FROM JURY.

Where the evidence presents a material is-
sue as to the rights of the parties, the question
is for the jury; but where the only issue on
which the evidence is conflicting is an immate-
rial one a verdict may properly be directed.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 342, 343; Dec. Dig. § 143.*]

3. PUBLIC LANDS (§ 178*)—CONVEYANCES—
PRESUMPTION OF DELIVERY OF CERTIFICATE.

On a conveyance of a headright certificate
by one to whom it was issued, there is a pre-
sumption that the certificate was delivered by
the grantor to the grantee.

[Ed. Note.—For other cases, see Public
Lands, Dec. Dig. § 178.*]

4. EVIDENCE (§ 54*)—PRESUMPTION—BASIS.

From the fact that a justice's judgment
was rendered against C. in a certain county, it
cannot be deduced that he was in that county
at that time, he being resident elsewhere, and
hence that he was there when the sheriff levied
on a headright certificate, which he had once
owned, but had conveyed, and hence that he
then had it in his possession, and hence that he
had in some manner reobtained title thereto, or
else that the claimants of the certificate under
his conveyance were negligent in permitting it
to remain in his possession, so as to estop them
from claiming against the purchaser at the
execution sale; one presumption not being per-
mitted to be based on another.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. § 74; Dec. Dig. § 54.*]

5. PUBLIC LANDS (§ 178*) — LAND CERTIFI-
CATES—TRANSFER—BONA FIDE PURCHASER.

The mere fact that a transfer of an unlo-
cated land certificate was not recorded would
not render a subsequent purchaser from the
same holder a purchaser in good faith, and
without notice, since the law does not authorize
the registration of such transfers; and hence,
in such cases, the rule is inapplicable which
places the burden on one claiming under a sen-
ior unrecorded deed to show that a grantee in
a junior deed had notice of the senior deed.

[Ed. Note.—For other cases, see Public
Lands, Dec. Dig. § 178.*]

6. PUBLIC LANDS (§ 178*) — LAND CERTIFI-
CATES—TRANSFERS—RIGHTS OF PURCHASERS.

The purchaser of an unlocated land certifi-
cate, though in good faith for value, and with-
out notice, will not be protected against prior
transfers thereof from his vendor; such cer-
tificate being merely personalty, and a purchas-
er taking only the title of his vendor, in the
absence of facts raising an estoppel.

[Ed. Note.—For other cases, see Public
Lands, Dec. Dig. § 178.*]

7. EXECUTION (§ 23*)—PROPERTY SUBJECT—
HEADRIGHT CERTIFICATE.

A headright certificate, issued by the au-
thority of the state, until located, is subject to
seizure and sale on execution.

[Ed. Note.—For other cases, see Execution,
Cent. Dig. § 85; Dec. Dig. § 23.*]

Error to District Court, Hardin County;
L. B. Hightower, Judge.

Action by Creighton-McShane Oil Com-
pany against James G. Tompkins and others.
Judgment for plaintiff and defendants bring
error. Affirmed.

See, also, 160 Fed. 303, 87 C. C. A. 427.

F. B. Stanley, D. F. Rowe, A. L. Davis,
W. D. Gordon, Masterson & Masterson, and
H. N. Atkinson, for plaintiffs in error. Dies,
Singleton & Dies, John L. Little, and Smith,
Crawford & Sonfield, for defendant in error.

REESE, J. In this case the Creighton-
McShane Oil Company sued James G. Tomp-
kins and others, who, it is agreed, are the
sole heirs of A. N. B. Tompkins and Susan,
his wife, in trespass to try title to recover
the B. H. Hawkins survey of land, contain-
ing 3,900 acres, lying in Hardin county.
Upon trial with the assistance of a jury, the
court refused a peremptory charge to find
for defendants, requested by them, and
charged the jury, at the request of plaintiff,
to return a verdict for plaintiff. Upon the
verdict for plaintiff, judgment was duly ren-
dered, from which defendants prosecute this
appeal by writ of error.

Before proceeding to the merits of the case
as involved in the assignments attacking
the charge of the court to return a verdict
for plaintiff, we will dispose of the contention
presented by plaintiffs in error as to the
effect of the judgment of the Circuit Court
of Appeals of the United States, in a case
between the same parties, for the same land,
involving the same issues presented in the
present case. This contention is based on
the following facts, which are undisputed:

Before the institution of the present suit,
plaintiff in the present action instituted a
suit against the present defendants, for the
same tract of land, in the United States Cir-
cuit Court at Beaumont. Upon trial of that
case, the court instructed the jury to return
a verdict for plaintiff, from which judgment
the defendants prosecuted a writ of error to
the Circuit Court of Appeals at New Orleans.
Upon hearing in that court, the judgment of
the United States Circuit Court was reversed,
and the case remanded. The decision is re-
ported in 160 Fed. 303, 87 C. C. A. 427. After
reviewing the facts, the court says:

"All of these facts should have been sub-
mitted to the jury, and as the record is now
before us under a peremptory instruction
to the jury to find for the plaintiff, we hold
that these facts establish the title in the de-
fendants. The case should have been sub-
mitted to the jury under proper instruction,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

and coming to us on the entire record we find that the verdict should unquestionably have been for the defendants.

"The judgment must therefore be reversed, and the case remanded for a new trial, with instructions to the lower court to proceed in accordance with the views herein expressed."

Upon motion for rehearing, these two paragraphs of the opinion were withdrawn, and the following substituted therefor:

"On the trial in the court below the trial judge, of his own motion, gave a peremptory instruction to the jury to find in favor of the plaintiff. This, under our views of the evidence and the legitimate conclusions to be drawn therefrom, was clearly erroneous. The case should have been submitted to the jury under instructions covering the legitimate presumptions which arise on the facts developed by the evidence, and as outlined in this opinion.

"Judgment of the Circuit Court is reversed, and the cause is remanded, with instructions to award a new trial, and thereafter proceed in accordance with law and the views herein expressed."

When the case reached the Circuit Court upon the remand, plaintiff filed a motion to dismiss the cause, and at the same time instituted this action in the district court of Hardin county. Thereafter the Circuit Court dismissed the former action, on plaintiff's motion.

[1] Under appropriate assignments of error, the following proposition is stated by plaintiffs in error: "Where a cause has been submitted to the United States Circuit Court of Appeals, and the same has been decided by said court, either by affirming or reversing the same, its findings of fact and conclusions of law are res judicata of all matters of fact and conclusions of law decided by said court, and its decision cannot be nullified by dismissing the cause and going into the state court." In support of this proposition, plaintiffs in error cite Messinger v. Anderson, 171 Fed. 785, 96 C. C. A. 445. The following paragraph from the syllabus of the opinion in that case will show more succinctly than we could state it what was really decided: "Every question of fact or law which was before a circuit court of appeals upon a writ of error, and decided by its opinion, whether of affirmance or reversal, is conclusively settled, both for such court and the court below, in further proceedings in the same action, and the effect of such decision as the law of the case is not changed by the fact that an intermediate judgment by a state court, in a suit between the same parties, and based on a contrary decision of the identical question, is pleaded as a bar on a second trial in the lower court." Under this authority, the findings of the Circuit Court of Appeals would have controlled the Circuit Court upon another trial in that court. Such findings, however, have no such

effect upon the trial of this case. Gardner v. Michigan Central R. R. Co., 150 U. S. 349, 14 Sup. Ct. 140, 37 L. Ed. 1107; Atlanta K. & N. Ry. Co. v. Hooper, 105 Fed. 550, 44 C. C. A. 586; Hooper v. Atlanta K. & N. Ry. Co., 107 Tenn. 712, 65 S. W. 405. The assignments of error referred to cannot be sustained.

[2] This brings us to the merits of the controversy. Under several assignments of error, plaintiffs in error complain of the action of the court in refusing, at their request, to instruct the jury to return a verdict for defendants, and of the peremptory charge to return a verdict for plaintiff. It will only be necessary to discuss those assignments, and propositions thereunder, which complain of the peremptory charge given. If the evidence presented any material issue as to the respective rights of the parties to the land, such instruction was error; but if, upon the facts about which the evidence is undisputed, no other judgment could have been properly rendered than one for defendant in error the trial court did not err in giving the peremptory instruction.

As we view it, the material facts are undisputed. As to those facts about which the evidence is conflicting, if the contention of plaintiffs in error with regard thereto would have supported a verdict for them, they would have had a right to have the issue submitted to the jury, but if, accepting their contention as to such disputed facts, they would not have authorized a recovery by plaintiffs in error they presented no material issue to be submitted to the jury. With this preliminary statement, we will proceed to a statement of the facts conclusively established by the undisputed evidence.

Both parties deraign title under B. H. Hawkins. On the 19th day of February, 1838, the board of land commissioners of Jasper county issued a certificate (No. 140) for one league and labor of land, the headright of B. H. Hawkins. Whether this certificate was issued to B. H. Hawkins, and afterwards assigned by him to Joseph Criswell, or issued by the board of land commissioners direct to Criswell, by virtue of the assignment to him by Hawkins of his claim to land, may possibly be said to be left in doubt by the evidence. The evidence on that point will be set out later. Both parties agree that in 1840 Criswell was the owner of the certificate. Whether as the party to whom it was issued directly, or as assignee thereof after such issuance, does not matter, in our opinion.

On October 28, 1840, Joseph Criswell, by an instrument in writing, conveyed this certificate, together with a number of other land certificates and land claims, to William Hart. On August 1, 1846, Wm. Hart, by instrument in writing, conveyed to Gilbert McKechney all his "right, title, interest, claim and demand" to the Hawkins certificate, along with other certificates and

land claims. In both of these instruments, the property conveyed is described as the headright of B. H. Hawkins. for one league and labor of land. Each of these instruments was recorded· as follows: In Bee county, September 4, 1877; in Sabine county, October 7, 1863; in Liberty county, April 1, 1878; and in Hardin county, March 5, 1878.

In 1853, Gilbert McKechney made affidavit, as required by the statute (Rev. St. 1895, art. 4121), of the loss of the certificate, etc., the affidavit following the language of the statute, and, also, as required by article 4120, made publication of such loss, and of his intention to apply for a duplicate. On May 8, 1854, a duplicate certificate was accordingly issued and delivered to Gilbert McKechney, who caused the same to be located upon land in Bee county, in 1874. The field notes were duly returned to the land office, but in 1878 this certificate and location were canceled, on account of the original certificate having been returned to the land office and patent issued.

By will of Gilbert McKechney, his title to this certificate passed to· John McKechney, who, in 1877, made a power of attorney to Silas M. Johnson, authorizing him to clear the title to the Hawkins headright, and also authorizing him to sell the land, giving him a third interest. Under the power of attorney, Johnson, for himself and as attorney in fact for John McKechney, conveyed the said land, which had been patented, as will be hereinafter shown. The land is described as 4,108 acres, being the B. H. Hawkins survey in Hardin county, "being the same land conveyed by Joseph Criswell to Wm. Hart by deed dated October 28, 1840, and by Wm. Hart to Gilbert McKechney, dated August 1, 1846. On July 10, 1888, P. M. Hawkins, one of the heirs of B. H. Hawkins, conveyed by quitclaim to John R. McKechney his interest in the land. The title thus held by John R. McKechney, as above set out, passed by mesne conveyances to John A. Creighton. On October 22, 1901, W. M. Hawkins, also heir of B. H. Hawkins, conveyed his interest in the land to G. W. Brown, who in turn, on December 18, 1901, conveyed to John A. Creighton. The title thus conveyed to John A. Creighton, as above set out, passed by mesne conveyance to, and is now vested in, the present plaintiff, the Creighton-McShane Oil Company. It was agreed that ιP. M. Hawkins and W. M. Hawkins were the sole heirs of B. H. Hawkins, the original grantee in the patent. Patent issued June 30, 1862, to "Benjamin H. Hawkins, his heirs or assigns," to the land in controversy. The patent recites that it was issued "by virtue of certificate No. 140, issued to B. H. Hawkins by the board of land commissioners of Jasper county on February 19, 1838, for one league and labor of land." This constitutes the title of defendant in error to the land.

With regard to the title of plaintiffs in error, the undisputed evidence discloses that on November 18, 1848, W. L. Rogers, sheriff of Nueces county, sold, and, by written instrument, conveyed to Edward Fitzgerald the land certificate referred to, under execution issued upon a judgment of the justice's court of said county in favor of J. M. Manning against Joseph Criswell for $17 and costs. The sheriff's deed recites that the certificate had been pointed out by the plaintiff as the property of Joseph Criswell. The price paid was $70. Fitzgerald, the purchaser, was attorney for Manning in procuring and collecting the judgment. The certificate is described as follows: "Containing one league and labor of land issued by the board of land commissioners of Jasper county on the 19th day of February, 1838, to Joseph .Criswell, assignee of Benj. H. Hawkins, and numbered one hundred and forty (140), which certificate is hereto attached." From the undisputed evidence, which need not be set out here, we find that the original certificate was in fact in the hands of the sheriff, and was attached to the deed, and was afterwards detached and attached to the deed from Fitzgerald to Manning, next hereafter set out, and was recorded with said deed in Liberty county, in 1854. The records of that county were afterwards destroyed by fire.

On November 18, 1848, Fitzgerald conveyed, for a consideration of $150, to J. M. Manning all his right, title. and interest in one-half of the certificate, describing it as in the sheriff's deed. In 1854 Manning recovered a judgment against the heirs of Fitzgerald for the remaining half of the certificate. In the pleadings and judgment, the certificate is described as the headright certificate of Benj. H. Hawkins, No. 140, issued by the board of land commissioners of Jasper county. On June 12, 1854, Manning conveyed his interest in one-half of the certificate to H. Durst, consideration $150, describing the certificate as issued to Joseph Criswell, assignee of Benjamin H. Hawkins. The deed recites that the certificate was attached, but this was not done. On January 20, 1854, Durst conveyed to E. A. and R. J. Palmer all his right, title and interest in the entire certificate, describing it as granted to Joseph Criswell, assignee of B. H. Hawkins. On June 5, 1854, E. A. and R. J. Palmer conveyed the entire certificate by special warranty, to William G. Nevill, describing it as above. On March 23, 1859, Nevill likewise conveyed to A. N. B. Tompkins, by same description. The deed was with special warranty. Tompkins was at the time district surveyor of the territory in which the certificate was located. In the view we take, it will be unnecessary to decide this question. We regard it as immaterial.

On April 4, 1859, the certificate was located on the land in suit; the survey being made by A. N. B. Tompkins, district surveyor, and the field notes reciting that it was made for Joseph Criswell, assignee of

Benjamin H. Hawkins. Upon this location, patent was issued, as above stated, to Benjamin H. Hawkins, his heirs or assigns, and was, as shown by the records of the General Land Office, forwarded to A. N. B. Tompkins July 4, 1862. Tompkins paid the government fees. We find that Tompkins had the certificate in his possession; that he made the survey as district surveyor for himself, and procured the patent to issue. On December 22, 1869, Tompkins conveyed 320 acres of the land to Delano and Harrison by deed duly recorded in Hardin county in 1870, and there has been, from time to time, successive conveyances of this 320 acres under recorded deeds. Tompkins claimed to own the land up to the time of his death in 1884, and his heirs have claimed it since. The land was assessed for taxes by Tompkins for the years 1860, 1865, 1866, 1867, from 1868 to 1872, 1877; by McKechney in ·1881, 1882, 1883, 1884, 1885, 1886, 1887, 1889; by Johnson, 1888; afterwards generally by the holders of the Hart title. There was no actual possession until 1904, when a tenant took possession for plaintiffs in error, and has been occupying it ever since. Hardin county was organized in 1858 out of part of Liberty county. The plaintiffs in error are the sole heirs of A. N. B. Tompkins. The conveyances of the certificate, from the sheriff's deed down to the deed to Tompkins, were recorded in Hardin county September 27, 1894. This constituted the title of plaintiffs in error.

The certificate is lost, having disappeared from the files of the General Land Office. So far as the records of the General Land Office show, this certificate was issued to Benjamin H. Hawkins direct by the board of land commissioners of Jasper county. The report of the board shows the issuance to Hawkins; Criswell's name not being mentioned. It was so dealt with by the official of the Land Office. It was shown that, according to the custom of the Land Office, if the certificate had been issued to him as assignee of Hawkins, the patent would have issued in the name of 'Criswell, in accordance with the provisions of article 4184, R. S. There is nothing in the records or files of the General Land Office to show any transfer of the certificate by Hawkins. Tompkins, in making the location, refers to the certificate as issued to B. H. Hawkins, and refers to Joseph Criswell as assignee of the certificate. To rebut the conclusion that the certificate was issued to Hawkins direct, and to show that it was in fact issued to Criswell, assignee of Hawkins, plaintiffs in error rely upon the recitals in the various conveyances of the certificate under the sheriff's sale and deed, in which the certificate is so described. While we think the overwhelming weight of the reliable evidence on this point sustains the contention of defendant in error that the certificate was issued to Hawkins, and after issuance assigned to Criswell, we think that the recitals in the deeds under which plaintiffs in error claim, being very old deeds, and the evidence all showing that the makers thereof had possession of the certificate, are admissible to prove that the certificate was issued, as stated, to Criswell as assignee of Hawkins. As before stated, we do not think this is material, and presented no material issue to be submitted to the jury. Whichever way the fact be found would not, we think, affect the proper determination of the issue of title.

Whether the Hawkins certificate was issued to him, and after issuance assigned by him to Criswell, or was issued directly by the board of land commissioners of Jasper county to Joseph Criswell, upon the production by him of evidence that Hawkins had transferred his right or claim to him, at all events, Criswell was the owner of the certificate, as evidence of the right to the league and labor of land to be located by virtue thereof, and as such he is the source of title of both plaintiffs and defendant in error, unless it be true that Hawkins never transferred the certificate, of which there is, in fact, no direct evidence, in which event the title of defendant in error, under the conveyance from the heirs of Hawkins, would be good. We do not understand, however, that defendant in error is inclined to contend for this title.

[3] The certificate, then, unquestionably passed to Hart under the conveyance of 1840, and by the conveyance from Hart passed to Gilbert McKechney in 1846. The presumption from the conveyance is that the certificate was delivered by Criswell to Hart, and by Hart to McKechney. Thompson v. Hines, 59 Tex. 528; Stubblefield v. Hanson, 94 S. W. 411. This would be according to the known course of business in such matters, and there is nothing in the evidence to rebut such presumption or inference. This is further corroborated by the evidence as to the loss of the certificate and proceedings to obtain a duplicate by McKechney.

[4] It is suggested by plaintiffs in error that, from the fact that the certificate was afterwards found in the possession of Criswell, the presumption would be authorized that it had been reconveyed to him. This cannot be for two reasons: First, there is no evidence that the certificate was in the possession of Criswell, and that he was asserting any ownership of it. We are asked to presume, from the fact that it was levied upon as Criswell's property in Nueces county, that it was in his possession, and from this presumed possession to further presume that he had reacquired the title. If the first presumption was justified, it would not afford a basis for the second; but we do not think the first presumption justified by the facts. There is no evidence that Criswell was in Nueces county at the time, or that he was ever there. Plaintiffs in error ask us to pre-

sume that he was there from the naked fact that a judgment was rendered against him in that county. This affords no basis for such presumption that he was there when the certificate was seized by the sheriff. So far as the record discloses, he was a resident of Jasper county. The chain of presumptions as suggested by plaintiffs in error is as follows: A judgment was rendered against Criswell in Nueces county, from which we may presume that he was in the county at that time; from this fact (established by presumption), we may presume that he was there when the execution was levied on the certificate; from this latter fact, we may presume that he had the certificate then in his possession when it was seized by the sheriff, and· from this fact we may presume that in some way he had reacquired title to it. A title cannot be supported by such a thin and long drawn out line of presumptions; and, besides, this presumption of a reconveyance of the certificate to Criswell is rebutted by the evidence of the affidavit of McKechney, in 1853, that he was the "just owner of the certificate," that it was lost, and his application for and obtaining a duplicate. There is absolutely nothing to support the contention that there is anything in the evidence to authorize the submission of this issue to the jury. U. S. v. Ross, 92 U. S. 281, 23 L. Ed. 707.

Having established, by the doctrine of presumption and by "piling one presumption upon another," that the certificate was in the possession of Criswell, in Nueces county, when it was seized by the sheriff, plaintiffs seek to justify the inference of facts that would estop McKechney and those claiming under him from setting up title in opposition to the sheriff's deed. The contention is that, the certificate having been issued to and in the name of Criswell, and he being the apparent owner, McKechney was guilty of laches in allowing Criswell to have the possession of it (even if he had not reconveyed it to him), and through such possession and apparent ownership Fitzgerald was induced to believe that Criswell was the owner, and, without notice of his conveyance of it to Hart, to buy it at the sheriff's sale, paying value. This inference rests upon as unsubstantial a basis as the other. If Criswell was in fact in possession of the certificate, which, as we have shown, cannot be concluded except by piling presumption upon presumption, there is absolutely nothing to authorize the farther presumption or inference, as a basis for estoppel, that such possession was with the knowledge or consent of McKechney, then the owner. McKechney and those claiming under him cannot be estopped to assert ownership of the certificate, upon the ground that the purchaser at the sheriff's sale supposed that the certificate was ‚the property of Criswell, unless McKechney, by some conscious act, contributed to this result. The only facts shown by the record are that McKechney being the owner of the certi-

ficate, it was lost, or at least ‚went out of his possession, and in some way found its way to Nueces county; and that on its face it showed that Criswell was the apparent owner. This, and nothing more. Estoppel cannot be raised upon these facts. How the certificate got to Nueces county, and into the possession of Criswell, if in his possession, we can only conjecture, and any one of several conjectures is as good as another. There is nothing in the evidence that authorized the submission of the issue of estoppel to the jury, thus turning them loose upon the open sea of conjecture, with nothing to guide them to a right result.

Nor is there anything in the evidence to authorize the conclusion that Fitzgerald and those claiming under him were innocent purchasers without notice of the Hart title. True the conveyances to Hart and from Hart to McKechney were not recorded. The law did not authorize the record of transfers of unlocated land certificates. Where could it have been recorded so as to give notice to a purchaser? Shifflet v. Morelle, 68 Tex. 389, 4 S. W. 843; Dodge v. Litter, 73 Tex. 319, 11 S. W. 331; Masterson v. Todd, 6 Tex. Civ. App. 131, 24 S. W. 682; N. Y. & Tex. Land Co. v. Hyland, 8 Tex. Civ. App. 601, 28 S. W. 210.

[5, 6] It has been held that the burden is upon the person claiming under a senior unrecorded deed to show that the holder under a junior deed had notice of the senior·deed. This doctrine does not apply to transfers of unlocated land certificates, the registration of which is not authorized. The burden was upon plaintiff to show that the purchasers under the sheriff's deed were innocent purchasers for value, and without notice, and this would not protect them, under the authorities cited, unless the facts estopped the holders under the Hart transfer.

[7] We have assumed that the land certificate could be levied upon and sold. The question has not been directly decided; but it has been held that such property could be sold by an administrator, and we think that the law has been generally understood to authorize such sales. Barker v. Swenson, 66 Tex. 411, 1 S. W. 117.

In the view we take of the case, it is not material whether or not John A. Creighton, when he bought the land, had notice or knowledge of the former transfers of the certificate under the sheriff's deed. Assuming that he had such notice, if we are correct that such sale conveyed no title, by estoppel or otherwise, as against the holders under the Hart title, it would not affect his title.

A discussion of the title in defendant in error, based upon the conveyances from the Hawkins heirs is unnecessary.

The undisputed evidence having shown title to the certificate in Hart and those claiming under him, and there being nothing in the evidence to authorize the conclusion that plaintiffs in error have acquired title by es-

toppel, or in any other way, the court did not err in instructing the jury to return a verdict for the plaintiff.

We have carefully examined each of the assignments of error and the several propositions thereunder, and they are severally overruled.

We find no error in the record authorizing a reversal of the judgment, and it is therefore affirmed.

Affirmed.