**CLEM et al. v. FORBESS et al.** (No. 3076.)

Court of Civil Appeals of Texas. Amarillo.
Oct. 10, 1928.

Rehearing Denied Nov. 7, 1928.

Douglas & Scott, of Lubbock, for appellants.

Bean & Klett, Vickers & Campbell, Bledsoe, Crenshaw & Dupree, O. W. McWhorter, Ratliff & Burks, Clyde F. Elkins, and Marshall & Stewart, all of Lubbock, for appellees.

RANDOLPH, J. Appellants brought this suit in the district court of Lubbock county against D. A. Forbess, as contractor, and E. R. Allen, as owner of a certain lot upon which the residence in controversy was built, to recover $1,271.22, claimed to be due for extras furnished by the appellants over and above those items that were furnished under the contract price of $9,000.

The plaintiffs' petition alleged substantially:

(1) That on the various dates shown in an attached exhibit the plaintiffs, at the special instance and request of the defendants Forbess and Allen, did sell and deliver to said defendants the said various items of goods, wares, and merchandise, and incurred and paid various items of drayage as set forth in said exhibit, and that said defendants jointly and severally promised, bound, and obligated themselves to pay plaintiffs therefor the various amounts of money shown opposite such exhibit, on the 1st day of the month following each such sale and delivery.

(2) In the event the plaintiffs are in error in this, and that the said defendants did not expressly or impliedly agree to pay plaintiffs the specific sums of money shown opposite each item, plaintiffs allege that nevertheless such items were sold and delivered by plaintiffs to defendants, at their special instance and request, and they thereby became bound and obligated, jointly and severally, to pay plaintiffs the reasonable worth and market value of such items at the times and places of delivery, and that such reasonable worth and market value is correctly represented by the amounts of money shown opposite each such items.

(3) Plaintiffs show that certain of the items were thereafter returned to plaintiffs, and certain offsets and credits agreed on and allowed, leaving defendants indebted to plaintiffs in said sum of $1,271.22.

(4) That, should it appear from the evidence that defendants Allen and Forbess did not expressly agree to pay plaintiffs the specific prices or the reasonable worth or value of said items, then plaintiffs say that the defendants are indebted to them for the following reasons:

That the defendant Allen, as owner of said lot, began negotiating with Forbess with a view of entering into a contract with him for the erection of a residence upon said lot as a "turnkey" job; that is, it was contemplated originally by said defendants that a definite and binding written contract should ultimately be entered into by defendants, whereby defendant Forbess, as a general contractor, should obligate himself for a fixed price to furnish all the labor and material necessary for the construction and completion of the residence according to definite written terms, plans, and specifications to be agreed upon by the parties. Plaintiffs allege: That no such contract was ever entered into or consummated. That Forbess examined certain tentative plans and specifications furnished him by Allen, and submitted a bid of $8,400 therefor. That the owner rejected said bid because the plans did not include certain features he desired. That he was leaving for Arkansas, and invited Forbess to figure on such additional features and submit a revised bid to him in Arkansas, through his wife. That thereafter Forbess submitted a bid of $9,250, which Allen rejected. and submitted a counter proposition, which Forbess tentatively agreed on, on the basis of the plans and specifications, as he understood same would ultimately be drawn. That the owner returned to Lubbock and instructed his attorneys to draw up a complete written contract, as had been contemplated by all parties, in which all the terms, plans, and specifications should be embodied and definitely and finally agreed upon. All the parties intended that, unless and until such final written contract was entered into, no contract with reference to such building should be in existence. That about such date Forbess made up a tentative estimate of the various materials and supplies which it was contemplated plaintiffs would furnish for said job, and, upon an itemized estimate furnished on said date, the plaintiffs offered to furnish materials of the kind and in the quantities shown in said estimate, for a total sum of $3,000. That Allen had learned of that fact, and, for the fraudulent purpose of trying to cheat and overreach these plaintiffs, had pretended to understand that plaintiffs were to be joint contractors with defendant Forbess in entering into the contract for said "turnkey" job, and pretended to believe that plaintiffs were offering to obligate themselves to furnish all materials of every kind and character for a total price of $3,000, regardless of alterations and changes of plans. That, upon instruction of Allen, his attorneys drew up a draft of contract, reciting plaintiffs to be joint contractors with Forbess, and obligating plaintiffs, as such, to furnish all materials. That, when said contract was presented to plaintiffs, they expressly refused to assent to or execute same. That thereafter plaintiffs are informed and believe that Allen and Forbess made various written proposals, counter proposals, and negotiations, partly in writing and partly in parol, in an attempt to arrive at a final and complete agreement about said job, but never succeeded in arriving at a definite contract, or, if so, same was abandoned and never performed, but a novation carried out later by the actual construction of the job as hereinafter alleged. That Allen requested and permitted Forbess to proceed

with the construction and completion of a house upon the lot, not in accordance with any plans and specifications, nor at any agreed price, but in accordance with directions given by Allen and his wife, as their whims and fancies dictated. That Forbess was instructed by Allen to change and alter the plans, and they were so frequently changed and altered that, when the house was completed, there had been a total departure and an abandonment of the contract. That Allen thereby made Forbess his duly authorized agent, with full authority to pledge Allen's credit for all labor that eventually went into the job.

(5) That Allen repeatedly stated that he was "behind" all the bills that went into the job.

Defendant Forbess pleaded his discharge in bankruptcy.

Defendant Allen, in his answer, alleged substantially that a contract was entered into by Clem Bros. Lumber Company and Forbess with him to furnish all material and labor for the construction of his residence for the sum of $9,000, and sets out a list of materials with which he was to be furnished and which were not furnished. He also pleads payment of the sum of $7,938 on the $9,000 contract price. He also pleads certain defects in the heating system, in the mirror as built, and other items which he charges will amount to more than the residue owing by him on the contract price not paid, and prays for an offsetting of same, and seeks to have other creditors who furnished material to go into the building made parties defendant in the suit.

Further, under leave of the court, defendant files a "trial amendment," in which he pleads his whole defense to the plaintiffs' cause of action. The "trial amendment," among other defenses, alleges that the plaintiffs and their agent, one J. W. Ragley, and Forbess obligated themselves to furnish all labor and material, and construct and finish the improvements for the price of $9,000, and denies that he ever obligated himself to pay the plaintiffs for the material furnished, and also that he does not deny liability for whatever extras there were. That, if there was any written contract or memorandum purporting to bind Forbess and not bind the plaintiffs, defendant Allen nevertheless says the same was made and entered into for and on behalf of plaintiffs, as agents, coadventurers and copartners of Forbess, the contractor, and it was understood that Clem Bros. were the contracting parties and responsible for all labor and material; also denies partnership with Forbess on the part of defendant Allen.

The various creditors who were made parties or intervened filed answers and cross-actions.

The case was submitted to a jury upon special issues and, in answer to such issues, the jury found:

(1) That plaintiffs and defendant Forbess were acting together as building contractors in the construction of the Allen residence.

(2) That the market value at the time and places of delivery of the extra materials that were made necessary by changes in the plans and specifications was $511.25.

\* \* \* \* \* \*

(5) That Allen had paid on the contract $7,938.

(6) That Allen was entitled to a $60 credit for defective work and shortages.

Upon this verdict the trial court rendered judgment, discharging the defendant Forbess; that J. B. Kimbrough, J. C. Copeland, and Ray Jones take nothing by the suit; that, defendant Allen having paid the sum of $7,938 on the amount of the contract price, leaving a balance due on same of $1,062, and it further appearing that the defendant Allen is indebted to the plaintiffs in the sum of $511.25 for extras, and that Allen is entitled to a credit of $60, leaving the sum of $1,513.25 due the plaintiffs from the defendant Allen, but it further appearing that plaintiffs' pleadings only seek a recovery from the defendant of the sum of $1,271.22, judgment is therefore rendered for plaintiffs and against Allen for said sum of $1,271.22. It further appearing from the verdict and findings of the jury that the plaintiffs and Forbess were acting together as building contractors in the construction of Allen's residence, and are jointly and severally liable for the respective claims of interveners, the court renders judgment in their favor upon such claims, aggregating approximately $1,979.56 against the plaintiffs.

From this judgment Clem Bros., plaintiffs, have appealed.

Appellant, by his proposition No. 1, which is as follows:

"Since the evidence did not disclose that J. W. Ragley had any express authority from the Clems to bind them to Allen for the performance of Forbess' $9,000 building contract, but on the contrary showed conclusively that Ragley did not have such authority; and since Ragley did not have any implied authority so to do as a necessary or reasonable means of accomplishing the end he was instructed to attain, namely to try to get Allen and Forbess together in a building contract; and since there was neither appropriate pleadings nor evidence upon the part either of Allen or any of the interveners, nor issues submitted and found, which showed the essential elements of an estoppel against Clems to deny the authority of Ragley so to do; and no evidence of ratification; it was reversible error to admit, over the objections of appellants, the testimony of the witnesses Allen, Mrs. Allen, Klett, and Ragley, to the effect that Ragley had stated without the authority, knowledge or acquiescence of Clems, 'that Clem Brothers were 'behind' or responsible for Forbess' contract, as shown by appellants' Bills of Exception Nos. 1–4 inclusive,"

—presents for our consideration the errors therein set out.

Clem Bros., a partnership, was in the lumber business in Lubbock, Tex. Ollie Clem was the managing partner. Some one had told him that Allen was going to build a residence, and, having met Allen, Allen told him that other materialmen were not treating him right on another job; that he was going to build another house; and that he (Clem) might get a chance to sell him. Clem sent his employee and salesman, Ragley, to Forbess, and told him (Forbess) about Allen wanting to build. Clem testifies that he met Allen down at the lumber yard a day or two after Allen and Forbess had signed a contract—at least the contract had been agreed on at that time. The evidence conflicts upon what was said at the meeting between Clem, Forbess, and Allen, but there is evidence that Clem stated that he was "behind" Forbess in the building of the residence, and, when the first contract was drawn by Judge Klett, and Clem Bros. were made parties as contractors with Forbess, Clem claims that he erased the name of Clem Bros. from it, and "filed it for safe-keeping" at the time.

Allen says that Clem came to him and said that he could not afford to appear in the contract as a contractor, as it would put him in bad with the other material or lumber men, and asked that a new contract be entered into leaving Clem Bros. out, which was done with the understanding, on Allen's part, that Clem Bros. were backing Forbess in the construction of the building. The evidence, while conflicting, clearly warrants the finding of the jury that Clem Bros., plaintiffs, were partners, acting with Forbess in the construction of the Allen residence. This being true, we are not authorized to disturb the verdict or set it aside. Campbell v. Gibbs (Tex. Civ. App.) 161 S. W. 430, 433; W. T. Rawleigh Co. v. Smith (Tex. Civ. App.) 231 S. W. 799; Masterson v. Todd, 6 Tex. Civ. App. 131, 24 S. W. 682; Wheelock v. Mayfield (Tex. Civ. App.) 197 S. W. 475.

Appellant urges error on the part of the trial court in that Allen, Mrs. Allen, and Klett, witnesses for defendant Allen, were permitted to testify that Ragley said that Clem Bros. were "behind" the Forbess contract, for the reason that it was not shown that said statement was made with authority from Clem Bros.

Clem testifies that Ragley was employed to keep the books and to make sales outside of the office as he could. He was Clem Bros.' city solicitor, and, in addition to a salary of $125 per month, he was to get a commission of 5 per cent. of the net profits on the sales he made. Forbess made his headquarters at Clems' Lumber Yard, and had no other office or headquarters, and was a new man in Lubbock. Clem testifies:

"I sent Mr. Ragley out to get in touch with Mr. Allen. I believe Mr. Ragley was about twenty-five years of age, with a family of two children. He wasn't just a school kid that we had picked up to help us, but he hasn't been out of school very long. I made him City Solicitor and instructed him to go out and get the business. I knew that this fellow Allen wanted a turnkey job, all labor and material furnished. We figured that Forbess was capable as any other contractor. I knew that under his contract that he, Allen, wasn't supposed to go out and employ labor on the job in the way of painters, brick labor, etc., or buy the material. Mr. Ragley just went out there to see Mr. Allen to see what he wanted. We found out that he was after a turnkey job. Just went out there to find out what he wanted. We didn't send Ragley out there to work with this fellow Forbess to help get the contract. Ragley was instrumental in helping Forbess get the contract with Allen signed up, because he was anxious to make some sales, show up his record, and he was going to get a commission on what material he did sell. My firm and I were pushing the making of a contract with Allen. We were not working on the contract, Mr. Forbess was doing that. Ragley was aiding in helping get the contract. He was anxious to get Mr. Allen to sign up on the dotted line on a contract. I didn't know that Mr. Ragley made the statement that myself and brothers and our firm would join in this contract and that it wouldn't be necessary to have a surety bond. We didn't tell this fellow Allen that it wasn't the thing to do to jump in and make a contract without a surety bond on a job of this size. It would be proper to have one in a case of that kind. I knew that the Allen contract had been made in which E. R. Allen was owner of the land on which the house was to be built and for whom it was to be built, and that some other parties had the contract to furnish the material and labor to complete and build that house for nine thousand dollars. The best evidence was for me to see the contract itself, rather see the contract than anything else. There was no surety company bond to bind us. On closer examination of that written contract that Allen had signed, I saw that the contractors were D. A. Forbess, H. T. Clem, Ollie Clem, and H. A. Clem, as the contractors, to build and complete this residence and garage for Allen, within a certain period of time and furnish all material and labor for nine thousand dollars. I did not know that Ragley had been instrumental and finally secured this contract. We knew that Ragley was working to get the contract, but we didn't know that he was including us in it. We had sent him out to try and get the contract. When Ragley brought the written contract to me with Allen's name signed to it, I struck out our names from it and filed it in the safe for safe-keeping at the time. Kept it just as a matter of record after I struck our names out of it, my name and the names of my brothers. I left Forbess' name in there as contractor, and E. R. Allen's name as the owner who was going to pay the nine thousand dollars to Forbess. Forbess was to do all this work and labor and material for nine thousand dollars. I think I sent the contract back by Mr. Ragley to Mr. Allen after I made that change in it. I couldn't say whether Ragley got back to Allen with the changed contract or not. The copy of the contract that I kept

was here a while ago. The contract that you now hand me is the one that I had."

■■ We think Ragley's employment gave him the apparent authority to make the contract for Clem Bros., under the facts as they are shown in the evidence, and that, having such apparent authority, the trial court did not err in admitting the testimony. The fact that Ragley was the agent of Clem Bros. is not denied, but the question here is the extent of his authority. If the principal, acting through an agent, vests such agent with apparent authority, such conduct is as binding on the principal as if the agent was actually possessed of the authority. Sullivan v. Fant, 51 Tex. Civ. App. 6, 110 S. W. 507.

There being additional evidence to sustain Allen's claim that there was a partnership existing between Clem Bros. and Forbess, and there being no question but that Ragley was the agent of Clem Bros., we hold that the question of limitation upon the authority of Ragley to make the statement that Clem Bros. were behind Forbess was within the apparent scope of his agency. At all events, it does appear that he was clothed with apparent authority.

■ Every agency, unless expressly limited, carries with it, as an incident, the authority to do whatever is necessary and proper in the performance of the purpose for which the agency is created. Birge-Forbes Co. v. St. Louis & S. F. R. Co., 53 Tex. Civ. App. 55, 115 S. W. 333.

Appellants further allege that the judgment in favor of interveners must be supported, if at all, upon an actual agreement of cocontractorship between the plaintiffs and Forbess; there being no estoppel proven in their favor.

We have held that the verdict of the jury finding that there was an actual partnership or joint adventure between the plaintiffs and Forbess was supported by the evidence, and this claim of error is overruled.

■ Appellants also contend that, in order to support a finding that the plaintiffs were acting as cocontractors with Forbess on the building contract, it must be proven that there was an agreement between Forbess and Clem Bros. to that effect. We agree that this contention is sound; but the actual fact of such relationship may be proved by circumstantial evidence as well as by direct evidence of the contract between them. Miller v. Laughlin (Tex. Civ. App.) 147 S. W. 711.

As we view the case, the facts and circumstances in evidence establish the relationship of Forbess and the plaintiffs as cocontractors, and warrant the verdict of the jury to that effect, and this is established in part by direct evidence and in part by circumstantial evidence.

We have considered all assignments of error, and, finding no reversible error, we affirm the trial court's judgment.