FILED

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

FEB 26 2015

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, | No. 13-35768 |
| Plaintiff - Appellant, | D.C. No. 9:09-cv-00160-DWM |
| v. | |
| PAUL BRADFORD, Supervisor of the Kootenai National Forest; JANE L. COTTRELL, Acting Regional Forester of Region One of the U.S. Forest Service; UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture; U.S. FISH & WILDLIFE SERVICE, an agency of the U.S. Department of Interior, | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, Senior District Judge, Presiding

Argued and Submitted February 5, 2015
Seattle, Washington

Before: FISHER, BEA, and MURGUIA, Circuit Judges.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

In 2009, Appellant Alliance for the Wild Rockies ("Alliance") moved to enjoin the Forest Service from implementing the Grizzly Project based on violations of the Endangered Species Act (ESA), the National Forest Management Act (NFMA), and the National Environmental Policy Act (NEPA). The district court granted summary judgment for the Forest Service on the ESA claim but enjoined the Grizzly Project on the basis of NFMA and NEPA violations. The Forest Service later moved to dissolve the injunction on the ground that it had cured the NFMA and NEPA deficiencies previously identified by the district court. Alliance opposed the motion and reasserted its ESA claim. The district court granted the motion, finding the NFMA and NEPA deficiencies cured, declining to revisit the ESA claim, and dissolving the injunction. Alliance now appeals.

We have jurisdiction under 28 U.S.C. § 1292(a)(1). Reviewing the district court's order dissolving the injunction for an abuse of discretion, and the legal determinations underlying the dissolution de novo, *N. Alaska Envtl. Ctr. v. Lujan*, 961 F.2d 886, 889 (9th Cir. 1992), we affirm.

"Because NFMA and NEPA do not provide a private cause of action to enforce their provisions, agency decisions allegedly violating NFMA and NEPA are reviewed under the Administrative Procedure Act ('APA')." *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1238 (9th Cir. 2005).

2

Similarly, we review ESA claims under the APA standard, "[i]rrespective of whether an ESA claim is brought under the APA or the citizen-suit provision." *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 481 (9th Cir. 2010). "Under the APA, we may set aside an agency decision if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Native Ecosystems Council*, 428 F.3d at 1238 (quoting 5 U.S.C. § 706(2)(A)).

Section 7 of the ESA requires all federal agencies to ensure that any agency action "is not likely to jeopardize the continued existence of any endangered . . . or threatened species or result in the destruction or adverse modification of habitat of such species." 16 U.S.C. § 1536(a)(2). In carrying out this duty, "each agency shall use the best scientific and commercial data available," *id.*, and must consult with the Fish & Wildlife Service to determine whether a proposed action is "likely to . . . adversely affect[]" a designated species, 50 C.F.R. §§ 402.01(b), 402.12(a).

The Forest Service did not violate the ESA in concluding that the Grizzly Project is "not likely to adversely affect" the grizzly bear population. The Forest Service relied on the Wakkinen Study, which is the best available science, and the Fish & Wildlife Service concurred in the Forest Service's determination. While the injunction was in place, the Forest Service voluntarily revisited its conclusion that the Grizzly Project is "not likely to adversely affect" the grizzly bear, and the

3

Fish & Wildlife Service reconcurred in the determination. Especially because this Court's review of scientific judgments and technical analyses within the agency's expertise is "at its most deferential," *see Great Old Broads for Wilderness v. Kimbell*, 709 F.3d 836, 846 (9th Cir. 2013) (citation omitted) (internal quotation marks omitted), we conclude that the Forest Service has complied with the ESA in authorizing the Grizzly Project.

The NFMA directs the Forest Service to develop a "forest plan." *See Great Old Broads*, 709 F.3d at 850. A forest plan is "a broad, long-term planning document . . . . [that] establishes goals and objectives for management of forest resources." *Earth Island Inst. v. U.S. Forest Serv*., 697 F.3d 1010, 1014 (9th Cir. 2012) (citing 16 U.S.C. § 1604(g)(1)–(3)). "After a Forest Plan has been developed and implemented, the NFMA prohibits site-specific activities that are inconsistent with the governing Forest Plan." *Great Old Broads*, 709 F.3d at 850; *see* 16 U.S.C. § 1604(i). "[T]he Forest Service's interpretation and implementation of its own forest plan is entitled to substantial deference." *Native Ecosystems Council v. Weldon*, 697 F.3d 1043, 1056 (9th Cir. 2012).

Here, the Kootenai Forest Plan requires that land "[m]anagement decisions . . . favor the needs of the grizzly bear when grizzly habitat and other land use values compete." In its Draft Supplemental Environmental Impact Statement (EIS), the

4

Forest Service enumerates multiple ways in which the Grizzly Plan "was made compatible with Grizzly Bear needs." For example, the Forest Service explains that "timber harvests and post-harvest treatments . . . would generally improve the growth of forage plants important to bears." Further, "all harvest would occur during the bear denning period." In its Final Supplemental EIS, the Forest Service explained that it selected the Grizzly Project over other alternatives because the Project "results in less disturbance to the grizzly bear" and "creates more core [habitat] area." We thus conclude that the Forest Service has complied with the NFMA in authorizing the Grizzly Project.

The NEPA requires that federal agencies prepare an EIS to evaluate the impacts of, and alternatives to, any major proposed federal action that may significantly affect the environment. 42 U.S.C. § 4332(C). In preparing an EIS, agencies must consider and analyze "cumulative impacts." 40 C.F.R. § 1508.25(c)(3); *Selkirk v. Conservation Alliance v. Forsgren*, 336 F.3d 944, 958 (9th Cir. 2003). "Cumulative impact is the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions . . . ." 40 C.F.R. § 1508.7. The agencies have "considerable discretion" to define the scope of an EIS. *W. Watersheds Project v. Abbey*, 719 F.3d 1035, 1046 (9th Cir. 2013) (citation omitted) (internal

5

quotation marks omitted). "Nonetheless, the agency's choice [of geographic scope] may not be arbitrary, and it must provide a reasoned decision and support for its chosen level of analysis." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 943 (9th Cir. 2014). The Forest Service has provided a reasoned decision for assessing the cumulative impact of the Grizzly Project at the Bear Management Unit level, as opposed to Forest-wide. Therefore, we conclude that the Forest Service has complied with the NEPA in authorizing the Grizzly Project.

**AFFIRMED**.

6

*__Alliance For The Wild Rockies v Paul Braford 13-35768__*

Bea, J., concurring:

I concur in the majority's conclusion that the district court correctly granted

the Forest Service's motion to dissolve the injunction.  But because I do not think

Plaintiff-Appellant Alliance's Endangered Species Act ("ESA") claim is rightly

before this court, I do not agree with the majority's decision to reach the merits of

that claim.  I write separately to explain my reasoning.

In 2009, the Alliance filed this lawsuit in federal district court to enjoin the

Forest Service from implementing the Grizzly Project.  It won summary judgment

on its NFMA and NEPA claims, but the district court granted summary judgment

to the Forest Service on one of Alliances's ESA claims.  The grant of summary

judgment to the Forest Service validated its conclusion in the 2009 Biological

Assessment that the Grizzly Project was "not likely to adversely affect" the grizzly;

the district court found this conclusion was neither arbitrary nor capricious.[1]  The

---

[1]  When an agency decides to undertake a discretionary action, the ESA
imposes a requirement that the agency (here, the Forest Service) obtain from the
relevant federal wildlife service (here, the Fish & Wildlife Service) a list of any
species protected by the ESA that may be present in the action area.  *See Forest
Guardians v. Johanns*, 450 F.3d 455, 457 (9th Cir. 2006).  The agency must then
prepare a biological assessment, in which the agency determines whether the action
is likely to adversely affect any of the species identified by the wildlife service.  *Id.*

1

Forest Service filed an appeal of the grant of summary judgment against it on the NFMA and NEPA claims, and Alliance cross-appealed the grant of summary judgment against it on its ESA claim. So far, so good. But then the Forest Service voluntarily dismissed its appeal, choosing instead to comply with the injunction. Alliance immediately dismissed its cross-appeal.

Ordinarily, "a second appeal in the same case only brings up for review the proceedings of the trial court subsequent to the mandate." *Mathews v. Columbia Nat. Bank*, 100 F. 393, 397 (9th. Cir. 1900). Thus, the presumptive conclusion is that having dismissed its first attempt to appeal the grant of summary judgment against it on the ESA claim, Alliance cannot now resurrect that claim.

Alliance has a common-sense response. When asked at oral argument, Alliance explained that as the prevailing party, it had no right to maintain its appeal in 2010; after all, the injunction had given it all the relief it sought. Thus, Alliance

_____

If the agency concludes that the action is likely to affect adversely a protected species, NEPA ordinarily requires that the agency enter into formal consultation with the wildlife service, a "lengthy and costly process." *Id.* If the agency concludes, as here, that the action is not likely to affect adversely a protected species, no consultation requirement is triggered. *Id.* Alliance claims in this case that the Forest Service's conclusion in the biological assessment that grizzlies were not likely to be adversely affected, and therefore that consultation was not required, was arbitrary and capricious.

2

argues, it would be unfair to apply the general rule in this context, since that would rob Alliance of any opportunity to get appellate review of its ESA claim.

Not so. The district court's order in 2010 enjoined the defendants from implementing the Grizzly Project, and remanded the matter "to the Forest Service to address the deficiencies in the Project analyses set forth in this opinion." Dkt. 44 at 69. The "deficiencies" were solely as to NEPA and NFMA issues; none were called out as to ESA issues, for on these the Forest Service had prevailed and Alliance had lost. Thus, Alliance had not obtained *all* the relief it sought—in particular, it had not obtained a permanent injunction mandating the Forest Service prepare a new biological assessment; indeed, no new assessment was ever prepared.

It is true that in some cases, this court has suggested that a party which has been granted summary judgment on some of its claims, which claims have been remanded to the agency, cannot appeal the grant of summary judgment against it on other claims. For example, this court stated in *Alsea Valley Alliance v. Dep't of Commerce*, 358 F.3d 1181, 1184–86 (9th Cir. 2004), that an agency remand is

3

ordinarily final only for purposes of a government appeal.[2]  Of course, *Alsea* was

in the odd procedural posture of an intervenor seeking to attack a judgment in

which the agency had acquiesced.  But this court applied the same reasoning in *Pit

River Tribe v. U.S. Forest Service*, 615 F.3d 1069, 1075–76 (9th Cir. 2010), and

concluded that it lacked appellate jurisdiction because the tribes would be involved

in the agency's decisionmaking on remand, and might receive all the relief they

sought.[3]  Thus, there is a colorable basis for Alliance's argument.

_____

[2]  In *Alsea*, an alliance of fishermen brought suit challenging a final rule of
the National Marine Fisheries Service that listed a species of salmon as
"threatened" under the ESA, on the grounds that the Service acted arbitrarily and
capriciously by excluding hatchery-spawned salmon from its population
calculations.  The district court granted summary judgment to the fishermen,
invalidated the final rule, and remanded the matter to the Service.  The Service did
not appeal, and presented the district court with an action plan to bring itself into
compliance with the district court's order.  Several environmental organizations
sought leave to intervene as of right under Federal Rule of Civil Procedure 24(a)(2)
for purposes of taking an appeal.  The district court granted the motion to
intervene, and the fishermen appealed.  The Ninth Circuit consolidated the
fishermen's appeal from the intervention order and the environmentalists' appeal
from the remand order.  The panel concluded that while there might be
circumstances (though it could think of none) in which a remand order was "final"
for purposes of a non-agency appellant taking an appeal, this was not such a case:
the agency's action on remand might well give the environmentalists all the relief
they sought.  Thus, the panel concluded that it lacked jurisdiction over the remand
order, and dismissed the environmentalist's appeal.

[3]  In June 1988, the Bureau of Land Management gave a ten-year geothermal
energy lease for the area near Medicine Lake to an oil company.  In May 1998, the
lease was extended for 5 years under a statutory provision allowing for such

4

However, Alliance's claim that it could not maintain its earlier appeal is foreclosed by this court's opinion in *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161 (9th Cir. 2011) (Fisher, J.).[4] There, several environmentalist groups brought suit in federal court challenging the 2004 amendments to the land management

extension if an environmental impact statement (EIS) was completed. The EIS was not completed until September 1998. The Pit River Indians, who had cliaimed Medicine Lake had spiritual significance for them, filed suit alleging various violations of NEPA and the National Historic Preservation Act (NHPA). The district court entered summary judgment for the agencies, and the tribe appealed. The Ninth Circuit reversed on the grounds that the subsequent EIS did not cure the agency's violation of NEPA in May 1998, when it extended the lease without first producing an adequate EIS, and ordered that summary judgment be entered for the tribe on remand. On remand, the parties disputed what should be done: the tribe argued that the leases had expired by their own terms, so a competitive bidding process needed to be initiated, while the agency argued that the lease extension should be vacated and the matter should be remanded to them. The district court sided with the agencies and entered a remand order, and the tribe appealed. The Ninth Circuit substantially affirmed (correcting a single sentence in the remand order not relevant here). Before reaching the merits, the panel inquired into its jurisdiction. The panel concluded that it lacked jurisdiction under the reasoning of *Alsea*, because the tribe would be consulted in the agency's action after remand and would, if it persuaded the agency not to extend the leases, obtain the relief it sought. The panel then construed the appeal as a petition for mandamus filed by the tribe to obtain the district court's compliance with the mandate, found that the petition satisfied the *Bauman* factors, and proceeded to the merits.

[4] The panel was highly splintered, with different judges writing different parts of the opinion and parts of the opinion having no precedential weight because no two judges agreed on the result. The portion cited here, however, was written by Judge Fisher with the concurrence of Judges Reinhardt, making that portion precedential. That portion is what determines the decision here.

5

plan for the Sierra Forest and the Basin Project, a timber harvesting project approved pursuant to the 2004 plan. The environmentalists alleged that the plan and project violated NFMA and NEPA in various ways. The district court granted summary judgment to the government on all but one NEPA claim. On that claim of procedural defect, in which the environmentalists alleged that the Forest Service had failed to consider an adequate range of alternatives to the project at hand, the district court granted summary judgment to the environementalists. The district court then ordered remand to the agency so that it could create supplemental analyses to cure the procedural defect.

The environmentalists appealed the district court's grant of summary judgment against them on the remainder of their claims. The agencies argued that the Ninth Circuit lacked jurisdiction over the appeal because the remand order was not a final order, and thus not appealable. The Ninth Circuit concluded that it had jurisdiction and affirmed in substantial part on the merits. The panel discussion explained that despite the decision in *Alsea*, a remand order was final for purposes of a non-governmental actor's appeal where "the broad relief sought could not be achieved through the action the district court directed the agency to undertake." *Id.* at 1175 (citing *Skagit Cnty. Pub. Hosp. Dist. No. 2 v. Shalala*, 80 F.3d 379, 384

6

(9th Cir. 1996)).  The panel conceded that it was "theoretically possible that on remand the Forest Service could" take actions to address the claims on which the district court had ruled in the government's favor, but "the final judgment rule deals in practice, not theory."  *Sierra*, 646 F.3d at 1175.  The panel held that because the issue that the environmentalists sought to challenge on appeal was "legally distinct" from the issue on which they had prevailed below and the district court's order  "permits adherence to rules that plaintiffs continue to challenge and the Forest Service continues to defend on appeal," an immediate appeal could be taken.  *Id.* at 1175–76.

As in *Sierra*, so here.  In 2010, Alliance sought to have its defeated ESA claim reviewed after having prevailed on its NFMA and NEPA claims.  As Alliance now argues, the ESA claim is distinct from the NFMA and NEPA claims; for one, it concerns a totally different document, the biological assessment, rather than the record of decision at issue in the other claims.  Moreover, the district court's order in 2010 permitted the agency to rely on its old biological assessment, which the agency continued to defend on appeal and continues to defend today; Alliance claims a new biological assessment is needed.

Thus, Alliance could have pursued its appeal from the district court's grant

7

of summary judgment in the government's favor on Alliance's ESA claim in 2010 and gained relief different from that it sought for its NFMA and NEPA claims. As a result, the district court did not err when it construed Alliance's argument below as a motion for reconsideration under FRCP 60(b)(2). The district court was therefore correct to deny the motion for reconsideration as time-barred, since FRCP 60(c)(1) requires that a FRCP 60(b)(2) motion be filed within one year from the entry of judgment. For aught that appears, in 2010 Alliance was satisfied with the injunction it had procured from the district court on the NFMA and NEPA claims, and intended to acquiesce in the district court's judgment on the ESA claim. Any claim Alliance has suffered unfairness is a consequence of its own litigation strategy in dismissing the appeal of its ESA claim, about which it cannot now complain.

I see no reason to deviate from the usual rule that a party gets one opportunity—and only one opportunity—to seek appellate review of an adverse judgment on a claim. Because Alliance had that opportunity in 2010 and rejected it by dismissing its cross-appeal, I would not revisit the merits of the ESA claim. Thus, I concur in the majority's conclusion that the district court's dissolution of the injunction should be affirmed, and in its analysis of the other claims raised by

8

Alliance.